## UNITED STATES v. AUSTIN–BAGLEY CORPORATION et al.

Circuit Court of Appeals, Second Circuit.
March 11, 1929.

No. 167.

230

Louis Marshall, of New York City, for appellant Fingerhood.

Lewis Landes, of New York City, for other appellants.

Richard H. Templeton, U. S. Atty., of Buffalo, N. Y. (Harold E. Orr, Asst. U. S. Atty., of Buffalo, N. Y., of counsel), for the United States.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge (after stating the facts as above). ▮▮▮ The indictment is drawn with such prolixity and confusion that it is hard to understand the pleader's meaning. It alleges that the accused conspired to violate the National Prohibition Act by making and selling alcohol fit for beverage purposes and specially denatured alcohol. That would scarcely be enough, but for the specifications, which allege that the plan was to sell specifically denatured alcohol as completely denatured, to persons not authorized to receive it, and to report the sales falsely. While it nowhere expressly appears that these sales were for beverage purposes, as forbidden by section 4 of title 2 (27 USCA § 13), though the facts would amply have justified that conclusion, a crime was nevertheless alleged, because section 15 of title 3 (27 USCA § 85) punishes by fine and imprisonment a violation of any regulations promulgated by authority of section 13 (27 USCA § 83). Regulation 61 as it stood in 1926 was violated by the acts specified; for example, articles 101 and 102 required the details of all shipments of specially denatured alcohol to be reported, and article 110 required all persons using it to have a permit. The violation of such regulations is a crime, if the statute imposes penalties in such case, though Congress does not of course itself enact them. U. S. v. Grimaud, 220 U. S. 506, 31 S. Ct. 480, 55 L. Ed. 563; U. S. v. Smull, 236 U. S. 405, 409, 35 S. Ct. 349, 59 L. Ed. 641; Avent v. U. S., 266 U. S. 127, 131, 45 S. Ct. 34, 69 L. Ed. 202. Again Congress may, so far as appropriate to the prohibition of the use of alcohol for beverage purposes, regulate the sale of industrial alcohol. Selzman v. U. S., 268 U. S. 466, 45 S. Ct. 574, 69 L. Ed. 1054. Hence the indictment laid a crime, regardless of whether there can be

spelled from it a charge of selling specially denatured alcohol for beverage purposes, which perhaps we might not be able to do even under § 32 of Title 2 (27 USCA § 49). The overt acts need not themselves be crimes, when broken from their context. Felder v. U. S., 9 F.(2d) 872, 874 (C. C. A. 2).

The proofs were adequate, and indeed overwhelming, to show a far-spread conspiracy systematically to evade the National Prohibition Act; they constituted exactly the situation which the conspiracy statute is designed to reach, and which amply justified a recourse to it. It is quite true that, except for Felter's testimony, no evidence directly connected Fingerhood with the diversion of any alcohol, and it is indeed unlikely that he took that part in the enterprise. However, such proof was unnecessary, for his position rendered it probable that he would have left such details to subordinates, and the case against him had far too great strength to require the testimony of a convicted freight agent. As things stood in the autumn of 1926, he and Labate were the sole owners of the Austin-Bagley Company shares, and therefore indirectly owned substantially all the shares in the Waterloo Company. Whether or not Fingerhood was sales manager, the jury might have found him to be the directing head of the Waterloo Company, however he might avoid the firing line. To suppose that such wholesale and elaborately concealed deliveries of easily "cleaned" alcohol would be contrived without his active connivance would have seemed to us preposterous, had we sat upon the panel. The subordinates could have had no incentive of their own to initiate or carry on the traffic; the profits could not go to them except as they might share in the collections, which the company alone could make. The whole scheme was devised with extraordinary cunning and audacity, even to the amazing extent of securing the installation of Fingerhood's lawyer, Harper, as prohibition administrator. How an intelligent jury could have acquitted any of the defendants we cannot conceive.

Unfortunately they did just that in the case of Chamberlain and Jackson, and this inconsistency is one ground of the appeal. If the verdict had left only one defendant who could be guilty, undoubtedly it could not stand. Feder v. U. S., 257 F. 694, 5 A. L. R. 370 (C. C. A. 2). There must be other possible conspirators, not acquitted, for a conspiracy is an agreement. Browne v. U. S., 145 F. 1, 13 (C. C. A. 2). The verdict must not itself deny the existence of the essential facts. But it is not a variance to fail to convict all those indicted, though strictly the agreement laid is then not the agreement proved. Breese v. U. S., 203 F. 824, 831 (C. C. A. 4). Even so, the appellants argue that a scrutiny of the evidence discloses that in the nature of things they could not have been engaged in the venture, unless Jackson and Chamberlain were also in it as their privies.

Upon that assumption there undoubtedly results a rational inconsistency between the verdicts; the conviction finds that the appellants have done what they could not have done alone; the acquittal, that their inevitable accomplices did not share in it with them. If we were limited to a rational reconciliation, we might perhaps have to say that neither finding could stand, because, as we could not choose between them, the doubt would infect both. But we are not so limited; the verdict in either case may have been the result of considerations not rational at all. With that possibility, so far as it touches the acquittal, we are not concerned, because the appellants have no vested right in the punishment of their fellows, however guilty. We need only consider whether there is any indication that the jury was improperly moved to convict, and upon that question the acquittal throws no light whatever. There is not the slightest reason to assume that they convicted the appellants as part of a bargain to acquit the agents; this may have been the case, but it does not appear. So we have nothing to do with the rational enmeshing of the two findings; each was made separately, each need only bear its own defects. The problem is precisely similar to that when the verdicts upon two counts are logically inconsistent. Marshallo v. U. S., 298 F. 74 (C. C. A. 2); Steckler v. U. S., 7 F.(2d) 59 (C. C. A. 2); Seiden v. U. S., 16 F.(2d) 197 (C. C. A. 2); Carroll v. U. S., 16 F.(2d) 951 (C. C. A. 2).

The remaining questions affect the conduct of the trial, of which the most important was the calling of the defendants Fingerhood, Joseph Beck, and Lagier to tell their official positions in the corporations defendant, and in Fingerhood's case to identify the corporate books as a condition to their admission. That the production of the books and documents could be compelled, even if they contained entries incriminating the accused, is now well-settled law. Wilson v. U. S., 221 U. S. 361, 31 S. Ct. 538, 55 L. Ed. 771, Ann. Cas. 1912D, 558; Wheeler v. U. S., 226 U. S. 478, 33 S. Ct. 158, 57 L. Ed. 309; Grant v. U. S., 227 U. S. 74, 33 S. Ct. 190, 57 L. Ed. 423. Though they be in their

very possession, even their property, it makes no difference; it is the semipublic character of the documents themselves which removes their inviolability, the fact that they record corporate transactions. However, the availability of the documents does not necessarily determine that of the testimony by which they may be authenticated. Conceivably it might be possible to force their production, and yet their possessor be protected from proving by his oath that they were what they purport to be. In some cases, as, for example, when they are authenticated by the corporate seal, this might be unnecessary, but usually something of the sort must appear.

While, therefore, we do not disguise the fact that there is here a possible, if tenuous, distinction, we think that the greater includes the less, and that, since the production can be forced, it may be made effective by compelling the producer to declare that the documents are genuine. In Heike v. U. S., 227 U. S. 131, 33 S. Ct. 226, 57 L. Ed. 450, it is true that the testimony of the accused was given upon a hearing in a separate proceeding inquiring into a different crime, and the plea in effect claimed immunity for any other crime, in the proof of which the books produced might become a necessary link. Nevertheless, it would seem that the testimony was privileged, since it did directly incriminate the witness, though in another matter, and that the immunity was necessary to avoid it. Unless that case is to be disposed of on the theory that no such immunity was claimed, it necessarily held that the privilege did not exist. Hence it appears to us that the case determines that testimony auxiliary to the production is as unprivileged as are the documents themselves. By accepting the office of custodian the holder not only exposes himself to producing the documents, but to making their use possible without requiring other proof than his own. All questions of immunity and the supposed misconduct of the district attorney in repeatedly demanding the documents in the jury's presence fall with the privilege. For this at any rate Heike v. U. S. is direct authority; "we see no reason for supposing that the act offered a gratuity to crime" (page 142 [33 S. Ct. 228]).

■ The judge declined to charge that circumstantial evidence could sustain a conviction only in case it excluded innocence "to a moral certainty," language which perhaps may be necessary in New York. People v. Bennett, 49 N. Y. 139; People v. Fitzgerald, 156 N. Y. 253, 50 N. E. 846; People v. Razezicz, 206 N. Y. 249, 99 N. E. 557. We cannot agree that there are any inexorable formulas on the subject; it is enough that the judge shall in substance tell the jury that they must be satisfied beyond any reasonable chance of mistake. This caution we agree he must give, but to translate such an admonition into a rigid ritual is to forget the actual determinants of a verdict and to mistake shadows for reality.

■ The corrected charge, after exception as to the testimony of the witness Felter, while certainly not too clear, was enough to avoid any limitations inferable from what had gone before. The failure to arraign the defendants till the close of the prosecution's case might have been serious before Garland v. Washington, 232 U. S. 642, 34 S. Ct. 456, 58 L. Ed. 772; but that decision must be taken as overruling Crain v. U. S., 162 U. S. 625, 16 S. Ct. 952, 40 L. Ed. 1097. Cornett v. U. S., 7 F.(2d) 531 (C. C. A. 8); Rossi v. U. S., 278 F. 351 (C. C. A. 8). The complaint of the judge's failure to inquire whether the defendants had any reason why sentence should not be imposed is indeed tabula in naufragio. U. S. Code, tit. 28, § 391 (28 USCA § 391).

■ It is peculiarly unreasonable to complain of the way in which Bauer's signature was procured as a basis for comparison. The prosecution's handwriting expert, Darby, was being cross-examined as to whether Bauer had signed one of the bills of lading falsely billing alcohol, a document as to which he had not testified on his direct. The context is not clear as to why he asked the defendant's counsel to ask Bauer to write his name; but nobody objected, and apparently the counsel did ask Bauer, and Bauer complied. It is curious that at this day such an event should be seriously urged as error.

The case was amply proved, and the trial was free from any but the most formal mistakes. The crime was elaborately devised down to the last detail; the proof has made it patent, and the penalty is light, considering the offense. It would be shocking if justice should miscarry because of any of the reasons put forward.

■ The failure of the appellee to give folio citations in its brief has much increased our labor; we should have refused to receive it, had we known of the omission in season. The index to the record should have been alphabetical.

Judgment affirmed.