In the Matter of WILLIAM F. BLEAKLEY et al., as Commissioners Appointed to Investigate the Administration of the Workmen's Compensation Law of the State of New York, Appellants, against JAMES F. SCHLESINGER, Respondent.

First Department, February 25, 1944.

*Herman T. Stichman* of counsel (*Carl E. Heilman* and *Jack Rabinowitz* with him on the brief), for appellants.

*Jacob J. Rosenblum* of counsel (*Wm. Francis Corson* and *William R. Rawick* with him on the brief; *Garey, Desvernine & Garey,* attorneys), for respondent.

GLENNON, J. The appellants are commissioners duly appointed by the Governor of the State of New York on January 4, 1943, under section 8 of the Executive Law, to examine and investigate the administration of the Workmen's Compensation Law of the State. Respondent is secretary and treasurer of Bendiner & Schlesinger X-ray Laboratories, Inc. The corporation is engaged in performing X-ray services for claimants for benefits under the Workmen's Compensation Law.

The appellants caused a *subpœna. duces tecum* to be served upon the respondent as secretary and treasurer of the corporation on May 4, 1943. It required him to produce on May 12, 1943, before the appellants the records of the corporation showing disbursements of cash during the period January 1, 1940, to May 4, 1943. Respondent appeared but failed to produce any books setting forth the disbursements of cash by the corporation during the stated period.

It is not disputed that the corporation is the employer of one Dr. Edward E. Kaplan, who in June of 1937 was authorized by the Industrial Commissioner of the New York State Department of Labor to provide medical care to claimants for benefits under the Workmen's Compensation Law as a specialist in roentgenology.

During the period specified in the subpœna claimants had been referred to the corporation for X-ray examinations by physicians, insurance carriers, employers and self-insured employers. These X-ray examinations were made by Dr. Kaplan but statements for the charges for such examinations were submitted by his employer, the corporation. The charges were payable by insurance companies which insured employers or by self-insured employers under the provisions of the law.

It appears that it.had been the practice of the corporation since some time prior to January 1, 1940, to make substantial payments in cash from its corporate funds to hundreds of individuals, others than those paying the charges therefor, in return for their directing claimants to it for X-ray examination. These payments were made to physicians who were authorized

by the State Industrial Commissioner to render medical care under the provisions of the Workmen's Compensation Law. Furthermore, there were payments to lawyers and employees of insurance carriers and self-insured employers, as well as to persons authorized under the law to represent the claimants for benefits. These facts were disclosed during the course of the hearing. The payments, commonly called "kick-backs", amounted in most instances to from thirty to fifty per cent of the amount charged by the corporation to insurance carriers or self-insured employers for X-ray examinations. In 1942 the payments exceeded $30,000 in amount. A bookkeeper in the employ of the corporation and others testified to these facts and they were not controverted by the respondent. The evidence disclosed that some time prior to January 1, 1940, the bookkeeper, in the course of her employment by the corporation, made entries in a series of four books listing the persons to whom the cash disbursements of the corporate funds were made and indicating the amount of each payment. There is no other record of the detail of these disbursements. No record of the corporation made available to the appellants disclosed the names of persons to whom the disbursements of corporate cash were made during the years in question. The books containing these records were turned over to respondent as secretary and treasurer of the corporation. According to the bookkeeper the current book showing the detail of disbursements of corporate cash was in his possession as recently as January, 1943.

On January 28, 1943, the appellants caused the respondent to be served with a *subpœna duces tecum* calling for the production of the books and records of the corporation, but the books showing the disbursements referred to were not produced. As we have seen on May 4, 1943, respondent was served with a *subpœna duces tecum* requiring him to produce the corporate cash disbursements books on May 12, 1943. He refused to do so. According to his affidavit, which is part of the record, respondent states that "I am unable to produce such books for them. I now state, unqualifiedly and unequivocally, that if I could produce that book and books so referred to, I would do so." The respondent has failed to show that the cash disbursements books which he was required to produce are not in existence. For all this record shows, the books may have been hidden in a vault or may have been shipped outside the State.

We are inclined to the view that the respondent might well have answered the following questions without incriminating

or degrading himself: " Are those books in existence today? "; " Where are those books today, would you answer please? "; " Have you turned those books over to anybody? "; " Do you know where those books are today? "; " Are you acting upon the advice of anyone in refusing to produce them? " It should be borne in mind that the books in question are not the personal property of the respondent. Those books belong to the corporation of which the respondent happens to be the secretary and treasurer.

A question similar to that involved in the present case was passed upon in *Wilson* v. *United States* (221 U. S. 361). There Wilson, who was president of the United Wireless Telegraph Company and incidentally had been indicted on the charge of using the mails to defraud in connection therewith, refused to permit the inspection of corporate records by a Grand Jury in the Federal court for the Southern District of New York. He produced the books but refused to turn them over, asserting that the contents thereof would tend to incriminate and degrade him. Mr. Justice HUGHES, in writing for the majority court, said in part at page 382: " But the corporate form of business activity, with its chartered privileges, raises a distinction when the authority of government demands the examination of books. That demand, expressed in lawful process, confining its requirements within the limits which reason imposes in the circumstances of the case, the corporation has no privilege to refuse. It cannot resist production upon the ground of self-incrimination. Although the object of the inquiry may be to detect the abuses it has committed, to discover its violations of law and to inflict punishment by forfeiture of franchises or otherwise, it must submit its books and papers to duly constituted authority when demand is suitably made. This is involved in the reservation of the visitatorial power of the State, and in the authority of the National Government where the corporate activities are in the domain subject to the powers of Congress." (See, also, *United States* v. *Austin-Bagley Corp.*, 31 F. 2d 229.)

We are of the opinion that the application made at Special Term for a warrant of attachment to commit the respondent to jail for his failure to produce the corporate books pursuant to a *subpœna duces tecum* should have been granted. His failure to do so certainly impaired and impeded, and to a great extent frustrated the very purpose of the investigation.

It cannot be disputed that the Governor was well within his rights in directing the appellants to investigate the administration of the Workmen's Compensation Law.

The refusal to answer the questions to which we have referred appears to us to be without reasonable cause within the meaning of subdivision 3 of section 406 of the Civil Practice Act.

The order should be reversed, with twenty dollars costs and disbursements, and the motion granted.

MARTIN, P. J., TOWNLEY, COHN and CALLAHAN, JJ., concur.

Order unanimously reversed, with twenty dollars costs and disbursements, and motion granted. Settle order on notice.