176 F.2d 594 (1949)
BORDONARO BROS. THEATRES, Inc.,
v.
PARAMOUNT PICTURES, Inc., et al.
No. 227, Docket 21160.
United States Court of Appeals Second Circuit.
Argued May 12, 1949.
Decided August 9, 1949.
*595 Frank G. Raichle, of Buffalo, N. Y. (Raichle, Tucker & Moore and James O. Moore, Jr., all of Buffalo, N. Y., on the brief), for Paramount Pictures, Inc., and Warner Bros. Circuit Management Corporation, defendants-appellants.
F. T. Anderson, of Philadelphia, Pa. (Gray, Anderson, Schaffer & Rome, of Philadelphia, Pa., and Skadden, Arps, Slate & Lyon, of New York City, on the brief), for Bordonaro Bros. Theatres, Inc., plaintiff-appellee.
Sidney B. Pfeifer, of Buffalo, N. Y., for RKO Radio Pictures, Inc., defendant-appellee.
Before CHASE, CLARK, and DOBIE, Circuit Judges.
CLARK, Circuit Judge.
This is a treble-damage action under the antitrust laws, 15 U.S.C.A. §§ 1, 2, 15, by an independent motion picture exhibitor brought originally against thirteen defendants, including major companies engaged, with their subsidiaries and affiliates, in one or more of the various phases of the production, distribution, and exhibition of motion pictures. It comes in the wake of the recent decision of the United States Supreme Court upholding lower court findings of a nationwide conspiracy to restrain competition in and to monopolize the distribution and exhibition of motion pictures by the named defendants. United States v. Paramount Pictures, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260; and see also Schine Chain Theatres v. *596 United States, 334 U.S. 110, 68 S.Ct. 947, 92 L.Ed. 1245; United States v. Griffith, 334 U.S. 100, 68 S.Ct. 941, 92 L.Ed. 1236. The central issue here, as in our recent case of Fifth and Walnut, Inc. v. Loew's Inc., 2 Cir., 176 F.2d 587, is whether the admitted inability of plaintiffs to obtain first-run[1] films for their theatre sprang from a conspiracy to exclude them from the first-run field or whether it was the natural result of independent business judgments as to the relative value of their exhibition facilities.
Since 1922 the City of Olean, New York, has been offered its motion picture fare in two first-run theatres, the Palace and the Haven. A second-run theatre, known as the Gem, and later as the State, is also available. The Palace theatre has been owned and operated by the Bordonaro family, first as a partnership and later as a corporation, for some thirty years. Until 1930 the Haven theatre was independently owned and operated, and from 1922 to 1930 the two theatres were operated jointly under a local pooling agreement. The agreement was terminated in 1930, and the Haven became a member of the Warner chain. It was leased to Intrastate Theatre Corporation, a wholly-owned subsidiary of Warner Bros. Pictures, Inc., and operated by Warner Bros. Circuit Management Corporation, another wholly-owned subsidiary and one of the appellants here. Immediately after this transfer, the Haven became the exclusive first-run outlet for Warner Bros. Pictures, Inc., Radio-Keith-Orpheum Corporation, United Artists Corporation, Loew's Incorporated, Twentieth Century-Fox Film Corporation, and Universal Corporation films, and since 1931 for Paramount Pictures, Inc., as well. At various times since 1930, Loew's, Fox, and Universal began to divide their product equally between the Haven and the Palace, although plaintiff alleged that its contract contained discriminatory features. During the period complained of, plaintiff obtained none of the product of Warner, Paramount, RKO, or United Artists, and, on allegedly discriminatory terms, half the product of Loew's, Fox, and Universal, and all of the product of Columbia Pictures Corporation (not a defendant).
This action was begun in September, 1946. The complaint was dismissed as to certain of the defendants by stipulation before trial, and as to others by the court at the close of the plaintiff's case. The jury returned verdicts in favor of several of the remaining defendants, leaving in the case only Paramount Pictures, Inc., which itself and through its subsidiaries and affiliates produces, distributes, and exhibits films on a nationwide basis; RKO Radio Pictures, Inc., a distributor subsidiary of Radio-Keith-Orpheum Corporation, which is also a producer, distributor, and exhibitor for the national market; and Warner Bros. Circuit Management Corporation. Against these three defendants the jury returned a verdict of $28,500. The court denied motions by Paramount and Warner to set aside the verdict and entered judgment against them for the damages trebled to the figure of $85,500, for attorneys' fees of $18,000, and for costs of $998.44. It did, however, set aside the verdict against RKO. Defendants Paramount and Warner appeal from the judgment against them, and plaintiff appeals from the judgment in favor of RKO.
To prove its case plaintiff at the trial introduced a considerable mass of evidence on the relative merits, past and present, of the Palace and Haven theatres, and on the negotiations between plaintiff and the major distributors, including defendants Paramount and RKO, with regard to the distribution of first-run features. This appears to us well-designed to support a prima facie case and carry the issues beyond the defendants' motions to the jury. Obviously a conspiracy such as was here charged rarely can be proved by direct evidence from the participating parties *597 themselves; reliance must be had upon the reasonable inferences drawn from their conduct in the light of the surrounding circumstances. Here plaintiff relied primarily upon a showing of the superior facilities afforded by the Palace over the Haven theatre in location, size, and equipment, the denial by these defendants of their products to the plaintiff, and the consequent poor showing in comparison of the Palace with the smaller Haven theatre. There was supplementary evidence of various kinds, including the showing of some leniency to plaintiff's theatre on the part of certain defendants at the very time only of disputes among themselves, the endeavors to draw plaintiff into their operations on various terms, and the statements of certain agents at various times as to the difficulties and disadvantages of independent operation of movie theatres. This evidence did not apply to all the defendants or cover all the period involved, but it was submitted to the jury for the latter's evaluation under a correct charge. True, the defendants sharply controverted this view and presented evidence to show that the Haven was the more desirable theatre. But it is hard to see what function the jury is to serve in these trials if it is not to be permitted to evaluate just this kind of evidence.
Defendants, in urging that the jury should not have been permitted to draw the inferences of combined and concerted action against plaintiff which it obviously did, state a standard of proof which we have rejected even in criminal cases. Where more than one inference can reasonably be drawn from the proof, it is for the jury to determine the proper one; the burden of proof of the entire case resting upon the plaintiff does not mean that the court should so far encroach upon the province of the jury as to require that one inference should be more thoroughly proven than another if both are reasonable and rational. United States v. Spagnuolo, 2 Cir., 168 F.2d 768, certiorari denied Spagnuolo v. United States, 335 U.S. 824, 69 S.Ct. 48, and cases cited therein; United States v. Sherman, 2 Cir., 171 F.2d 619, 621. So evidence tending to show that an independent exhibitor, operating a theatre at least as desirable as the theatres of the exhibitors affiliated with the major concerns, was refused first-run films for exhibition was held to make out a prima facie case under the antitrust laws in Bigelow v. RKO Radio Pictures, 327 U.S. 251, 66 S.Ct. 574, 90 L.Ed. 652. Cf. William Goldman Theatres v. Loew's Inc., 3 Cir., 150 F.2d 738. Here the additional evidence as to the sales policies of the distributor defendants and their attempt to buy out plaintiff served to strengthen plaintiff's case, at least to the extent that the jury believed it.
Damages in such a situation necessarily cannot be assessed with mathematical precision; but the testimony of plaintiff's expert witness, Samuelson, "while purely an estimate and introduced as such, was proof of a kind as definite and certain as the subject-matter admitted." William H. Rankin Co. v. Associated Bill Posters of U. S. and Canada, 2 Cir., 42 F.2d 152, 155, certiorari denied Associated Bill Posters of U. S. and Canada v. William H. Rankin Co., 282 U.S. 864, 51 S.Ct. 37, 75 L.Ed. 765. Defendants must not be allowed to create their own immunity by the extent and duration of their conspiracy.
Defendants object that the jury verdict and judgment against them is inconsistent with the verdict in favor of other defendant distributors, and that it constitutes a fatal variance between the pleadings and proof, and the judgment. But "the question on review should not be whether the verdict against the corporations is consistent with the acquittal. * * * Rather it should be whether the conviction is consistent with the evidence." United States v. General Motors Corp., 7 Cir., 121 F.2d 376, 411, certiorari denied General Motors Corp. v. United States, 314 U.S. 618, 62 S.Ct. 105, 86 L.Ed. 497; cf. United States v. Austin-Bagley Corp., 2 Cir., 31 F.2d 229, 233, certiorari denied Austin-Bagley Corp. v. United States, 279 U.S. 863, 49 S.Ct. 479, 73 L.Ed. 1002. And we cannot say that a jury verdict against all the defendants remaining in the case at the time it was submitted to the jury would have been inconsistent *598 with the evidence. As a practical matter the choice made by the jury, far from being strange, may be viewed as showing discriminating scrutiny of the evidence, in the light of the differences in conduct of the defendants pointed out above. Nor does there seem any substance in the technical objection of variance. This objection is certainly not favored in modern law; in any event it is harmless unless it serves to mislead an opponent. See Clark on Code Pleading, 739, 740, 2d ed. 1947. It is difficult to see how these defendants could have been misled, in the light of the background furnished by the Paramount case, supra, since the conspiracies clearly developed out of a general atmosphere of monopoly and restraint of competition. Even a single vertical conspiracy between Paramount, as a distributor, and Warner, as an exhibitor, would scarcely be outside the scope of the pleadings and proof, against such a background. By contrast, the variance held to be fatal in Kotteakos v. United States, 328 U. S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557, a criminal case, involved an indictment charging thirty-two defendants with participation in a single general conspiracy, and proof of thirty-two quite separate and independent conspiracies. As we observed in United States v. Austin-Bagley Corp., supra, 2 Cir., 31 F.2d at page 233, "it is not a variance to fail to convict all those indicted, though strictly the agreement laid is then not the agreement proved."
In what we have just said, we have considered the case as it was submitted to the jury. Moreover, since we think the judge was in error in setting aside the verdict against RKO we have no occasion to consider the objections of these defendants to the judgment against them after RKO's removal from the case. In his memorandum the judge thought the evidence against RKO insufficient because RKO did not change its policy of preference for the Haven theatre with the advent of Warner Bros. into the exhibition field in Olean and the choice of theatres was a debatable question about which distributors might reasonably differ and further because RKO's policy did not coincide with any uniform selling policy of other distributors. But what happened under the original pooling agreement does not seem too relevant for the later history; and, however single may RKO's policy have appeared (in this one instance as compared to its usual co-operation noted in the Supreme Court cases), it did amount in net consequence to that of the others. It appears to us that the judge has recounted factors appropriate for the jury to consider, but not for taking the case from the jury. The existence of an agreement in restraint of competition is always difficult to prove. As the agreement becomes established, not only is its operation better concealed, but its effects are more and more difficult to disentangle from the effects of business hazards outside the scope of the antitrust laws. Knowing that a conspiracy to monopolize the first-run exhibition of motion pictures existed during the period in suit, and realizing also that certain theatres are necessarily better adapted for first-run showings, judges should be most circumspect in overturning a jury verdict including or excluding a particular theatre from the scope of the conspiracy.
Upon the appeal of defendants Paramount Pictures, Inc., and Warner Bros. Circuit Management Corporation, the judgment is affirmed. Upon the plaintiff's appeal, the judgment in favor of RKO Radio Pictures, Inc., is reversed and the action is remanded to the district court for the reinstatement of the verdict against that defendant and for the entry of such judgment as may be appropriate in the light of that reinstatement.
NOTES
[1] "Runs are successive exhibitions of a feature in a given area, first-run being the first exhibition in that area, second-run being the next subsequent, and so on, and include successive exhibitions in different theatres, even though such theatres may be under a common ownership or management." United States v. Paramount Pictures, 334 U.S. 131, 144, note 6, 68 S.Ct. 915, 923, 92 L.Ed. 1260.