TRIANGLE PUBLICATIONS, INC., Respondent, *v.* ARTHUR M. FERRARE, as President of Local Union No. 26 of the National Association of Broadcast Employees and Technicians, AFL–CIO, et al., Appellants.

Third Department, November 26, 1957.

*Lipsitz & Green* for appellants.

*Marcus Manoff* for respondent.

FOSTER, P. J.   This is an appeal from an order of the Supreme Court at Special Term which directed three individual defendants to answer certain questions at an examination before trial, and to produce and authenticate certain documents.

Plaintiff owns and operates a radio station and a television station in the city of Binghamton, New York. It has sued the defendants for an injunction against unlawfully interfering with its business and for damages in the amount of $100,000. The individual defendants involved in this appeal are Ferrare, president of a labor union known as Local No. 26 of the National Association of Broadcast Employees and Technicians, AFL–CIO; James Sturges and Peter Capani, Jr., whose official connection with the labor union named, if any, does not appear in the record.

Prior to 1956 there existed between plaintiff and Local No. 26, N A B E T, a collective bargaining agreement. During that year attempts were made to renew it which fell through and the agreement expired. Apparently, although it is not clearly stated, employees of the plaintiff belonging to Local No. 26 went on a strike. Plaintiff claims that since then the defendants have conducted and induced an unlawful secondary boycott of plaintiff's sponsors.

The complaint alleges, among other things, that since the termination date of the collective bargaining agreement " the defendants * * * have unlawfully conspired and continue to unlawfully conspire to ruin and destroy the plaintiff's good will, trade and business " by continuing and inducing a secondary boycott; and, *inter alia,* by threatening plaintiff's sponsors with ruin or destruction of their business, and the dissemination of " untrue * * * scurrilous and perverted accounts " of the controversy between plaintiff and Local No. 26 so as to induce the people to blacklist plaintiff's sponsors. We must assume that plaintiff proposed to prove such charges, if it is able to do so. They are serious charges, and we can by no means be certain that they do not embrace violations of the Penal Law, notably those sections dealing with criminal libel, conspiracy and threatening by means of any writing to do unlawful injury to the property of another (Penal Law, §§ 551, 580, 1340). It is against the background of these allegations and the complaint as a whole, as well as the questions in controversy, that the order appealed from must be examined.

The rules or principles relative to self incrimination are easy to state but frequently difficult to apply with any satisfactory degree of certainty. The witness himself must necessarily be the best judge, under ordinary circumstances, whether an answer will lead to incriminating him, but if it clearly appears that he is using the privilege as a sham or subterfuge, the question of privilege may become one for the exercise of the court's discretion (*People ex rel. Taylor* v. *Forbes,* 143 N. Y. 219; *People*

v. *Priori,* 164 N. Y. 459; *Mason* v. *United States,* 244 U. S. 362). It is recognized that neither the courts nor anyone else can possibly anticipate the effects of an answer in all questions where the privilege is claimed. Hence a rough and ready rule has been adopted to the effect that a witness ought not to be compelled to answer, where he has claimed the privilege, if there is a reasonable doubt or fair argument that his answer may tend to incriminate him, or furnish a link in the chain of incrimination. In applying this rule it appears to us that there is a reasonable doubt, or at least a fair argument can be made, that all of the questions concerning the personal activities of the defendants individually might tend to incriminate them if answers were compelled. We are not as sanguine as the Special Term that the alleged acts of the defendants do not come within the spirit or intent of any criminal statutes. In that connection we merely point out that the allegations of the complaint contain considerably more than merely the naked allegation of a secondary boycott, and allege means and methods that may well be more than merely illegal.

With respect to a direction to produce union documents held in official or custodial capacity by any of the defendants the Special Term stated the law correctly, although questions propounded to which such a rule might apply were couched in language too broad to be squarely within the scope of the rule. Ordinarily the production of documents or papers held in an official capacity can be compelled even though they may tend to incriminate the defendant personally according to the Supreme Court of the United States (*United States* v. *White,* 322 U. S. 694). There is also some State authority to the same effect (*People ex rel. Massarsky* v. *Adams,* 268 App. Div. 974, affd. 294 N. Y. 819). On the other hand, the Supreme Court of the United States has also decided that a union official does not have to answer questions relative to the whereabouts of records if his answers would tend to incriminate him; and it is still an open question in the Supreme Court whether a union official must authenticate records (*Curcio* v. *United States,* 354 U. S. 118). Some lower Federal courts have required authentication (*United States* v. *Austin-Bagley Corp.,* 31 F. 2d 229). In this State it has been held that a union official cannot be required to state if he held certain records even though if it could be shown that he did have them he could be required to produce them (*Bradley* v. *O'Hare,* 2 A D 2d 436). Thus some uncertainty exists whether a union official can be required to authenticate records, and also, we may add, how extensive the term " Authenticate " may be construed. In the present state of the author-

ities we should say generally the only safe rule to follow is that a union official may be required to produce such union records as he holds or possesses in a custodial capacity, including official letters and circulars, but he may not be interrogated orally concerning them if his answers might tend to incriminate him, beyond merely stating that the records he produces are official records of the union.

Within the reasonable limits of an opinion each question cannot be discussed separately and ruled upon. The order should be reversed insofar as the questions indicated by numbers on the appendix below are concerned. The reversal embraces all questions based upon personal activities of the defendants involved where the refusal to answer was based upon incrimination, and also those questions where it cannot be ascertained from the form of the question whether the particular defendant was personally involved or not; but does not include those questions where the objection was based solely upon the scope of the examination. We find no general question or questions directed to any defendant requiring the production and authentication of minutes, resolutions and documents of Local No. 26 that were clearly held in a custodial capacity. As to questions not embraced in the foregoing the order should be affirmed.

APPENDIX

Deposition of Ferrare: Questions Nos. 6, 7, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 21, 22, 23, 24, 25, 26, 27a (Court 27), 28a (Court 28), 29, 30, 31, 32, 33, 34, 36, 37, 38.

Deposition of James Sturgis: Questions Nos. 6, 7, 8, 9, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 46, 48, 49, 50, 51, 52, 53, 59, 60, 61, 65, 66, 74, 78, 80, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 120, 121, 122, 124, 126, 127, 128, 129, 130.

Deposition of Peter Capani, Jr.: Questions Nos. 1, 3, 4, 5, 6, 7, 8, 9, 14, 15, 16, 17, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46.

BERGAN, COON, HALPERN and GIBSON, JJ., concur.

Order reversed, on the law and facts, without costs, insofar as the questions mentioned in the appendix to the opinion are concerned; otherwise affirmed.

Settle order.