**In re GRAND JURY PROCEEDINGS.**

Misc. No. 88–522.

United States District Court,
E.D. New York.

Dec. 8, 1988.

MISHLER, District Judge.

The government moves this court to hold the John Doe Corporation (the corporation) in civil contempt for failing to comply with subpoenas *duces tecum* dated November 18, 1986, and June 15, 1988, and with a July 15, 1988 order of this court ("the order").

·The subpoenas *duces tecum* required that the corporation produce the *originals* of all responsive documents and produce a custodian of the records who had knowledge of the search done for those documents. The order reflects the same request and asks the custodian to produce records reflecting off-the-book payments to employees and payroll records of any and all supervisors who signed "glazing sheets." (Transcript of Motion dated July 15, 1988, pp. 22–24; 33–37).

Ms. L, in a declaration signed January 14, 1988, asserts that she is Assistant to the President of the corporation who works limited hours with the books and as a travel arranger. In this capacity she declares that searches were done in compliance with the subpoenas and all documents responsive to them have been either "provided . . . or obtained during the course of a search warrant." L testified as Custodian of the Records before the grand jury on January 21, 1988, March 17, 1988 and again on July 27, 1988.

L, according to the government, has produced copies instead of originals and has been unable to testify as to who searched for the responsive documents, if a search in fact had been carried out, or whether any documents had been knowingly withheld.

Documents have been produced pursuant to each subpoena. In addition the government seized documents pursuant to a search warrant executed on December 3 and 4, 1987.

The government questions the completeness of the documents produced and claims that the corporation by designating an incompetent custodian of the records failed to comply with the subpoena. L, who as-

sumed the duties of custodian in January, 1988, testified that she had little knowledge about the search done for documents responsive to the subpoena.

*The Duties of a Corporation's Custodian of Records*

In the leading case of *United States v. Austin–Bagley Corp.*, 31 F.2d 229 (2d Cir.), *cert. denied,* 279 U.S. 863, 49 S.Ct. 479, 73 L.Ed. 1002 (1929), Judge Learned Hand held that a corporate officer could be compelled to identify and authenticate corporate records produced pursuant to a valid subpoena duces tecum, reasoning:

> [W]e think that the greater includes the less, and that, since the production can be forced, it may be made effective by compelling the produced to declare that the documents are genuine.... [T]estimony auxiliary to the production is as unprivileged as are the documents themselves. By accepting the office of custodian the holder not only exposes himself to producing the documents, but to making their use possible without requiring other proof than his own.

*United States v. Austin–Bagley Corp.*, 31 F.2d at 234.

When a subpoena is addressed to a corporation, the corporation must find some means by which to comply because there is no Fifth Amendment defense available to it. *Braswell v. United States,* — U.S. —, 108 S.Ct. 2284, 2294, 101 L.Ed.2d 98 (1988) (citing *In re Sealed Case,* 266 U.S. App.D.C. 30, 44, n. 9, 832 F.2d 1268, 1282, n. 9 (1987)).

Obviously, an individual must act on the corporation's behalf to produce the documents responsive to the subpoena. A corporation may appoint a custodian of records to act in this representative capacity. *Braswell,* 108 S.Ct. at 2294 [citations omitted].

Most of the case law developed in this area deals with the unavailability of a Fifth Amendment defense for the custodian of corporate records.[1] We can determine the duties of the custodian from these cases.

In *United States v. Barth,* 745 F.2d 184 (2d Cir.1984), *cert. denied,* 470 U.S. 1004, 105 S.Ct. 1356, 84 L.Ed.2d 378 (1985), while courts were still struggling with the possibility of the corporate record-keeper invoking his own Fifth Amendment privilege, the Second Circuit made it clear that it was the basic obligation of the corporation to comply with the summons by producing *someone*—any knowledgeable employee, or even a new agent—to testify about the records. *Id.* at 1240.

The issue to be decided here, however, is what the custodian must do for the corporation to have properly complied with the requirements of the subpoena.

■ Clearly, the custodian must produce books or records responsive to the subpoena and can be required to identify or authenticate these documents. *Curcio v. United States,* 354 U.S. 118, 125, 77 S.Ct. 1145, 1150, 1 L.Ed.2d 1225 (1957) (dicta). The act of production itself is a representation that the documents produced are the ones demanded by the subpoena. *Id.*

■ The duty of the custodian of records, however, extends beyond mere production or non-production of documents. An agent who fails to produce documents to comply with a valid subpoena must, if called before a court, give sworn testimony that he does not possess them. This is part of his duty to comply with a lawful demand for them. *United States v. O'Henry's Film Works, Inc.,* 598 F.2d 313 (2d Cir. 1979).

■ The corporation has not fulfilled its obligation if it produces an agent that it has sent on an unguided search for records. In *Braswell,* the subpoena was issued to the petitioner in his capacity as corporate president. It ordered him to produce the corporation's books and records. The petitioner was the president of the two corporations in question and sole shareholder of one of them. The Court rejected petitioner's claim that he could invoke his Fifth Amendment privilege because his act of production would have independent testimonial significance which would incrimi-

---

**1.** This issue has been recently addressed by the    Supreme Court in *Braswell.*

nate him individually. In reaching this conclusion the Court addressed and rejected two solutions suggested by the petitioner that would have enabled the documents to be produced without this asserted infringement of his rights.[2] One proposed solution was to allow the corporation to choose an agent to produce the records who could do so without fear of self-incrimination. At the same time, petitioner insisted that he could not be required to help the appointed custodian in his search for the subpoenaed documents. The Court reasoned that this proposed "solution" was a chimera. "[W]here the corporate custodian is likely the only person with knowledge about the demanded documents—the appointment of a surrogate will simply not ensure that the documents sought will ever reach the grand jury room; the appointed custodian will essentially be sent on an unguided search." 108 S.Ct. at 2294.

In the case before us, the government allowed the corporation to choose its own agent, directing the subpoena to the Custodian of Records. Section II, clauses 1 and 2 of the subpoena issued on November 18, 1986 provides:

1. The subpoenaed party is to designate an officer or employee having personal and thorough knowledge of the records and who shall have been responsible for the search for documents responsive to this subpoena. That person shall appear before the grand jury on the subpoena return date, produce the documents called for, and be examined concerning the completeness of the response.

2. The subpoenaed party is required to produce to the grand jury all documents responsive in whole or in any part to any paragraph or subparagraph of this subpoena attachment.

Section II, Clauses 3, 5, 6 and 7 of the subpoena issued on June 15, 1988 provides:

3. The subpoenaed party is to designate an officer or employee as the person responsible to produce documents to the grand jury on the subpoena return date (the "Custodian"). Such Custodian shall have direct, personal, and thorough knowledge of the company's records and shall have knowledge of, and responsibility for the search conducted by your company for documents responsive to this subpoena. The Custodian will be examined concerning the completeness of the response on the return date.

5. On the subpoena return date, the Custodian is to appear before the Grand Jury, produce the documents called for, and be examined concerning the Company's production.

6. No document called for by this subpoena shall be destroyed, modified, removed, or otherwise made inaccessible to the Grand Jury.

7. If the Company has knowledge of any document that would be responsive to this subpoena attachment but has been lost, destroyed, or discarded in the last seven years, it shall identify to the extent possible each such document and provide an explanation of the loss, destruction, or discarding (including identification of each person authorizing or having knowledge of the loss, destruction or discarding).

The subpoenas required the corporation to designate an agent with knowledge of the company's records, who could be held responsible for the search conducted and could be examined before the grand jury with regard to the completeness of the response. Case law supports this, rejecting the view that an appointed agent sent on an "unguided search" satisfies the subpoena. The custodian is to be held responsible for both production with the ability to authenticate and/or non-production with the ability to testify to non-possession. It is necessary for the corporation to appoint a custodian who satisfies these requirements.

---

**2.** The petitioner also suggested that the subpoena could have been served on him along with a grant of immunity as to the act of production. The Court rejected this solution as one having potentially serious consequences involving the heavy burden the government might later have to bear to prevent the preclusion of crucial evidence that was legitimately obtained. *Braswell,* 108 S.Ct. at 2295.

## Has L Satisfied the Requirements of a Custodian of Records

On February 23, 1987, the company provided documents meant to be responsive to the November, 1986 subpoena. However, it was not until January 1988 that the company provided the name of a custodian of records. On January 14, 1988 L signed a declaration attesting to the fact that searches were conducted to comply with the demands of the subpoena and that "[a]ll documents called for by the subpoenas and located during these good faith searches have either been provided to you in the past or obtained during the course of a search warrant or are enclosed herein."

### Compliance with the November, 1986 Subpoena

L testified before a grand jury sitting in the Eastern District of New York on January 21, 1988 and again on March 17, 1988. L's testimony shows she knew little about the search done pursuant to the November, 1986 subpoena, including what documents had been provided, whether all of the responsive documents were turned over to the grand jury (as compared to being seized during the subsequent search), and whether any documents had been knowingly withheld. However, L's declaration, signed in January, 1988 only claims that the documents called for were, by the time of her appearance, in government hands. She claimed to have been only a minor participant in the search made for documents pursuant to the November, 1986 subpoena.

This, however, may be considered just a technical contempt if it is shown that both the subpoenas and the judicial order have since been properly complied with.

### Compliance with the June 15, 1988 Subpoena and the Judicial Order

█ The subpoena issued on June 15, 1988 was reviewed by this court on July 15, 1988 at which time the court ordered the company to produce any records of off-the-book payments to employees and the payroll records of supervisors who signed the glazing sheets. The court instructed the custodian of records to produce the records responsive to the order on July 20, 1988.

On July 20th, Z appeared before the grand jury as custodian of records. His testimony revealed that he had not read the subpoena and that he knew nothing of the search for responsive documents. In response, this court signed a subpoena *duces tecum* issued to L. It was identical to the subpoena which had been issued to the firm on June 15, 1988.

On July 27, 1988, L again testified before the grand jury for whom she produced an additional number of corporate documents. It is not clear from her testimony whether these documents are copies of originals, the corporation's preserved versions which are copies of originals, or copies of the latter. More importantly, although L is willing to authenticate the documents produced to date, she is still not able to satisfy the requirements of a corporate Custodian of Records. She admits to limited knowledge of the types of documents generated by the firm and almost no knowledge about the contents of some of the documents she produced or the nature of the search conducted for them. Her assertion that she has produced all the documents responsive to the subpoena to the best of her knowledge and that she has conducted a good faith search can be given little weight. Her testimony under oath, that the corporation does not possess any responsive documents that she has not produced "to the best of her knowledge" when her knowledge is so limited is unsatisfactory.

## CONCLUSION

The court finds that the corporation is in contempt for failing to produce a competent custodian of records in compliance with two subpoenas and a judicial order. The only person who appears to have the requisite knowledge for compliance is Mr. E, President of the corporation.

The court directs E and L to appear on December 21, 1988 at 9:00 a.m. and give testimony before this court as to:

(1) the manner in which originals and copies of documents had been made;

(2) the preservation or disposition of originals of documents;

(3) whether originals of documents (including glazing sheets) contained any information of any kind (even a symbol or mark) not on the copy;

(4) any and all other matters to which the aforementioned subpoenas referred.

The court defers the imposition of fines and penalties against the corporation for past contempts and to compel compliance with the subpoenas until completion of the hearing.

SO ORDERED.