**MEISELMAN et ux. v. PARAMOUNT PICTURES, Inc. et al.**

Civ. No. 669.

United States District Court
W. D. North Carolina.
Charlotte Division.

Sept. 8, 1949.

J. M. Scarborough, Charlotte, North Carolina, Clagett & Schilz, Washington, D. C., for plaintiffs.

Brooks, McLendon, Brim & Holderness, Greensboro, North Carolina, Dwight, Harris, Koegel & Caskey, New York City, for defendants.

WARLICK, District Judge.

In the United States District Court for the Western District of North Carolina, at Charlotte, North Carolina, Civil Action No. 669 is found to be one in which H. B. Meiselman and Claire Meiselman, individually and trading and doing business as H. B. Meiselman Theatres, a copartnership, are the plaintiffs and Paramount Film Distributing Corporation, Loew's Incorporated, RKO Radio Pictures, Inc., Twentieth Century-Fox Film Corporation, United Artists Corporation, Warner Bros. Pictures Distributing Corporation, Universal Film Exchange, Inc., Columbia Pictures Corporation, Charlotte Amusement Company Inc., Strand Theatres Company, Inc., and H. F. Kincey, individually, are the defendants. The action was instituted on the 7th day of December, 1948, and in due time the issues were joined on the pleadings being filed. The plaintiffs along with their complaint filed a motion for a preliminary injunction pendente lite in words as follows: "enjoining the defendants, their successors and assigns, and all persons acting for and in their behalf, from licensing the feature motion pictures distributed by them to Charlotte Amusement Company, Inc., Strand Theatres Company, Inc., and H. F. Kincey, unless at the same time they offer to license such motion pictures to the Center theatre of plaintiffs, Charlotte, North Carolina, on the same terms and conditions as accorded the aforesaid defendants at their Broadway, Imperial and Carolina theatres; and further enjoin the defendants from licensing their feature motion pictures in any manner so as to confer on the Broadway, Imperial and Carolina theatres a monopoly of the supply of first-run feature motion pictures in the city of Charlotte, North Carolina; and to enjoin said defendants from continuing to restrain and prevent the Center theatre from obtaining feature motion pictures in such manner as to place it in an inferior position in relation to the Broadway, Imperial and Carolina theatres." and the motion came on for hearing before the undersigned United States District Judge at Charlotte on February 17 and 18, and by agreement of counsel was again heard on the adjourned dates of March 7, 9, 10, and 11th, at Charlotte, and subsequently was concluded, all by agreement of counsel, representing the parties to the action, in Asheville, North Carolina, on June 16th, 1949,

and the case taken under advisement by the court for the purpose of rendering judgment on the motion filed, and after examination and consideration of the record as made in the progress of the case, consisting of the complaint, plaintiffs' motion for preliminary injunction, plaintiffs' affidavits, defendants' answers, defendants' affidavits, and evidence offered by the plaintiffs and the defendants, both oral and documentary, and after the submission of briefs and oral argument the court for the purpose of the record, makes the following findings of fact:

1. That the plaintiff, H. B. Meiselman, is an experienced operator of motion picture theatres, being engaged at present in the operation of the Center theatre in Charlotte, and a theatre in Rockingham, and another in Wilmington, North Carolina, that previous to building and operating the Center theatre he had owned and managed theatres in Asheville, Charlotte, and elsewhere, the Charlotte theatre being a neighborhood theatre known as The Manor, and is now and has been familiar with the distribution of motion pictures by the producers and the distributors in the Charlotte area from which is served the territory of North and South Carolina.

2. That the defendants are, as the evidence indicates, producers, distributors, or exhibitors of motion pictures products in the Charlotte area, and have been engaged in that capacity for a considerable number of years.

3. That the Center Theatre was completed and ready for occupancy and was actually opened for the exhibition of motion picture products to the public on October 7, 1948, and a fine, modern theatre, with 804 seats including such things as are called smoking and nursing or crying rooms, and is located on a main thoroughfare known as East Morehead Street, about two miles form the "square" in the City of Charlotte, and is in what is classified as one of the finer residential sections of the city,—its location being in Myers Park.

4. That during the spring of 1948 the plaintiff, H. B. Meiselman, acting for himself and his co-plaintiff, undertook and did in many instances contact many of the representatives of the defendants with respect to securing their products for the purpose of operating the Center theatre on a first-run basis, and made known to the representatives of the defendants contacted his desire and determination to operate the Center theatre as a first-run theatre, these contacts coming about by letter, telephone, wire, personal visits to New York City, etc., and to local representatives in the City of Charlotte.

5. That the plaintiff, H. B. Meiselman, prior to the erection of the Center theatre and during the time of his dealings with the defendants and for a considerable period of time prior to those dates, was aware of the way and manner in which motion pictures were distributed, in the Charlotte territory and had knowledge of the fact that the trade regarded the Carolina the Imperial and the Broadway theatres, located on or near the "square", in each instance, as the theatres in which first run pictures should be and had customarily been shown for years.

6. That in the plaintiffs' complaint against the defendants equitable relief and damages are sought to be had and recovered as follows:

a. Preliminary injunction pendente lite.

b. Permanent relief in the form of money damages for an alleged loss in past operations and for future damages, the plaintiffs seeking money damages for an alleged actual loss in the sum of $10,000 and future damages in an additional amount of $250,000, the complaint likewise asking that they be allowed to recover treble the amount of present and future damages.

The action being instituted under the provisions of Section 7 of the Act of Congress, July 2, 1890, c. 647, 26 Stat. 209, as amended, 15 U.S.C.A. § 15 note, said Act generally being known as the Sherman Act, and Sections 4 and 16 of the Act of Congress of October 15, 1914, c. 323, 38 Stat. 731, 737, as amended, 15 U.S.C.A. §§ 15, 26, and generally known as the Clayton Act.

7. That subsequent to the filing of the complaint and the motion for a temporary injunction which was simultaneously asked for, and prior to the hearing of said motion on the dates above, and in line with orders duly made by the court, changes were made with respect to the defendants as named as follows, in that: Paramount Film Distributing Corporation was substituted as a party defendant for Paramount Pictures, Incorporated, and Universal Film Exchanges Incorporated was substituted as party defendant in lieu of Universal Pictures Company, Inc., it being agreed by counsel that neither of the originally named defendants was doing business within the State of North Carolina, but that their representative film products were being distributed by the substituted defendants. Information was given by the defendants to the plaintiffs that the Charlotte Amusement Company, Inc., as set out in the original complaint should be the Charlotte Amusement Company, and that the defendant named as Strand Theatres Company should be Strand Theatres, Inc., which is set down here for the purpose of the record.

8. At the conclusion of the evidence on the last date of the hearing in Charlotte, namely March 11, 1949, the plaintiffs, upon their own motion took a voluntary non-suit to its cause of action alleged against Loew's Incorporated since it appeared from the evidence heard that this named defendant had entered into the distribution of its pictures through sealed bids which seems to have been acceptable to the plaintiffs.

9. That H. B. Meiselman and Claire Meiselman, his wife, are citizens of North Carolina, and reside in Charlotte. That the Center theatre building located as has been stated at 1427 East Morehead Street, has various shops located therein including a delicatessen and is actually owned by the Center Theatre Building, Inc., a North Carolina corporation with all of the stock owned and held by the plaintiff Meiselman and wife except two qualifying shares owned by two directors, not parties to this action, and that the building owned by the corporation as aforesaid is leased to the plaintiff Meiselman, individually, at a rental of $1,000 per month, by an agreement offered in evidence to which some exception was taken by the defendants but which on the record appears to be proper and in form and as such is accepted by the Court as a valid lease.

10.. Paramount Film Distributing Corporation is a corporation organized and existing under the laws of the State of Delaware, with its principal office at 100 West 10th Street, Wilmington, Delaware, and maintains a place of business at 1501 Broadway, New York City. All of its issued and outstanding stock is owned by Paramount Pictures, Inc.

11. Loew's Incorporated is a corporation organized and existing under the laws of the State of Delaware, with its principal office and place of business at 1540 Broadway, New York, New York.

12. RKO Radio Pictures, Inc., is a corporation organized and existing under the laws of the State of Delaware, with a place of business at 1270 Sixth Avenue, New York City.

13. Twentieth Century-Fox Film Corporation is a corporation organized and existing under the laws of the State of New York, having its principal place of business at 444 West 56th Street, New York City.

14. United Artists Corporation is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 729 Seventh Avenue, New York City.

15. Warner Bros. Pictures Distributing Corporation is a corporation organized and existing under the laws of the State of New York, having its principal office and place of business at 321 West 44th Street, New York City.

16. Columbia Pictures Corporation is a corporation organized and existing under the laws of the State of New York with its principal place of business at 729 Seventh Avenue, New York City.

17. Universal Film Exchanges, Inc., is a corporation organized and existing under

the laws of the State of Delaware, with its principal offices in the City of New York.

18. The defendant Charlotte Amusement Company is a corporation organized and existing under the laws of North Carolina, with its principal place of business in Charlotte, North Carolina. All of the outstanding capital stock of Charlotte Amusement Company, except three qualifying shares, is owned by Paramount Pictures, Inc. The Charlotte Amusement Company leases from private ownership a building located at 226 North Tryon Street, Charlotte, North Carolina, and operates therein the Carolina Theatre. This theatre is located within one block of the area known as the "square" at the intersection of the main business streets of downtown Charlotte. The Carolina theatre is a modern theatre and has a seating capacity of 1405 seats. The Charlotte Amusement Company also leases from private ownership another building located at 209 South Tryon Street, Charlotte, North Carolina, and operates therein the Broadway theatre. This theatre is located within one block of the "square" and is a modern theatre, having a seating capacity of 1103 seats.

19. The defendant Strand Theatre, Incorporated, is a corporation organized and existing under the laws of North Carolina, and has its principal place of business in Charlotte, North Carolina. All of the outstanding capital stock of Strand Theatre, Incorporated, except three qualifying shares is owned by Paramount Pictures, Inc., Strand Theatre, Incorporated, leases from private ownership the building located at 124 South Tryon Street, Charlotte, North Carolina, and operates therein the Imperial Theatre. This theatre is located within one block of the area known as the "square" at the intersection of the main business streets of downtown Charlotte. The Imperial Theatre is a modern theatre which has recently been completely renovated and redecorated and has a seating capacity of 925 seats.

20. The defendant H. F. Kincey is a citizen of the state of North Carolina and resides in the City of Charlotte, North Carolina; the said defendant is a stock-holder, director and secretary of the Wilby-Kincey Service Corporation, a corporation organized and existing under the laws of the State of Florida which has an office at 120 East 3rd Street, Charlotte, North Carolina, and holds one qualifying share of capital stock of the Charlotte Amusement Company and of Strand Theatre, Incorporated, and is a director in each corporation.

21. Paramount Pictures, Inc., owns 50% of the capital stock of Wilby-Kincey Service Corporation and H. F. Kincey and R. B. Wilby own the remaining 50% of the capital stock of the corporation, each respectively owning 25% of said stock.

22. Wilby-Kincey Service Corporation is a service corporation operated on a non-profit basis which, from its Charlotte office under the supervision of the defendant H. F. Kincey, renders certain management services to the Carolina and Broadway theatres leased and operated by Charlotte Amusement Company, whose stock is owned 100% (except for three qualifying shares) by Paramount Pictures, Inc., and to the Imperial theatre which is leased and operated by the defendant Strand Theatre, Incorporated, whose capital stock is owned 100% (except for three qualifying shares) by Paramount Pictures, Inc. Among such services rendered are those of licensing and booking motion pictures for exhibition in each of these three theatres. Neither the Wilby-Kincey Service Corporation nor the defendant H. F. Kincey individually, or as an officer, agent or employee of said corporation renders any services to theatres in which Paramount Pictures, Inc., does not own a stock interest directly or indirectly.

23. In Charlotte, North Carolina there are fifteen motion picture theatres. In the downtown business and shopping area are located the Carolina, Imperial, and Broadway theatres, which customarily exhibit motion pictures first run in Charlotte. Also located in the downtown area are the Charlotte, State and Tryon theatres, which exhibit action and Western pictures and which also play pictures on a subsequent run. There are five admitted neighborhood theatres,—the Manor, Plaza, Visulite,

Dilworth, Astor and plaintiffs' Center theatre, located as described herein. There are three theatres catering to colored patronage. In addition, there are also three drive-in theatres on the outskirts of Charlotte.

24. The name, address and seating capacity of the four theatres directly involved in this action are:

Carolina—226 North Tryon—1405
Imperial—124 South Tryon—925
Broadway—209 South Tryon—1103
Center—1427 East Morehead—804

The seating capacity of the Carolina theatre exceeds the seating capacity of the Center by 75%; the seating capacity of the Imperial theatre exceeds that of the Center by 15% and the seating capacity of the Broadway theatre exceeds that of the Center by 37%.

25. From the opening of the Center theatre on October 7, 1948, through Saturday, December 4, 1948, three days before this action was instituted on December 7, 1948, there had been exhibited at said theatre, first-run in Charlotte, motion pictures of the defendant distributors as follows:

Loew's Incorporated (MGM) 1
RKO Radio Pictures 1
Warner Bros. 1
Universal 3
Columbia 2

During the aforesaid period the Center theatre also exhibited first run in Charlotte for three days a feature motion picture entitled "The Flame" which was produced by Republic Pictures, Inc., a company not a defendant in this action. The evidence classifying some, possibly all of these films, with an exception or two, as "B" films in the trade, but first run in Charlotte.

26. From the date of the opening of the Center theatre on Octobr 7, 1948, and up to December 7, of the same year, the date on which this action was instituted, from a computation made by the court it appears that the Center theatre had indicated net profit for the eight weeks' period of approximately $2,300 to which would be add-

ed any profit made from "The Flame," produced by Republic Pictures, Incorporated, not a defendant to this action, or from which would have to be subtracted any loss sustained from the showing of "The Flame". During the period beginning on December 5, 1948, and ending March 5, 1949, which included the Saturday preceding the adjourned hearings in this matter, the Center theatre exhibited exclusively feature motion pictures of the defendant distributors first run in Charlotte as follows:

Loew's 5
RKO Radio Pictures 2
Universal 4
United Artists 1

A rough calculation shows a net profit of approximately $5,700 for that thirteen weeks' period. And the court further finds from the evidence during the twenty-one weeks of operation from pictures secured for showing at the Center theatre for the account of the plaintiffs would show an indicated profit of approximately $8,000 after all fixed charges and expenses have been deducted.

27. That the Center theatre building was erected at the approximate cost of $223,000, and that in the event a similar situation as that described in the preceding paragraph was carried through a twelve months' period under like and similar circumstance would yield income a little better than 8% to the holding corporation.

28. All motion pictures (excluding short subjects and news reels) exhibited by the Center theatre as the main attraction to the theatre's programs have been pictures known in the motion picture industry as "feature motion pictures", rated by some witnesses in the evidence as "B" pictures.

29. All feature motion pictures exhibited by the Center theatre beginning with the opening of the theatre on October 7, 1948, up to the date of the hearing on the plaintiffs' motion had not theretofore been exhibited in any theatre in Charlotte and the exhibition of each such picture constituted the first run of that picture in the City of Charlotte. While the feature picture "San Francisco" was a re-issue, this picture hav-

ing been originally released in 1936, the picture contained prominent stars, was distributed exactly as if it were a first-run picture, was bid for by plaintiffs and others in the same manner as first run pictures, and the exhibition of said feature picture by the Center theatre constituted the first-run showing of this picture in Charlotte on the re-issue run. The exhibition of the feature picture "Boy with the Green Hair" by the Center theatre was the "premiere" showing of this feature picture in the states of North Carolina and South Carolina.

30. The Center theatre, on March 5, 1949, had licensed and available to it for booking and subsequent exhibition five feature motion pictures which it had contracted for with the defendant Columbia Pictures Corporation, and two more features from RKO Radio Pictures. It had submitted competitive bids on two or three pictures of Universal and on at least one picture of Loew's Incorporated which had not yet been awarded to any exhibitor. This backlog of feature pictures was an ample reserve supply of feature motion pictures for the Center theatre under industry practices of selling one picture at a time and constituted a more abundant backlog for this one theatre than the sixteen (16) feature motion pictures that, on March 5th, constituted the number of pictures contracted for and available for booking in the Carolina, Imperial, and Broadway theatres operated by the defendants Charlotte Amusement Company and Strand Theatres, Incorporated.

31. On November 30, 1948, seven days before the filing of the complaint, there were available for the Carolina, Imperial, and Broadway theatres only fifteen (15) pictures and not 38-40 pictures as stated in the affidavit of the plaintiff H. B. Meiselman; the said fifteen pictures constituted no more than a reasonable supply of feature pictures for the three theatres under industry practices and said theatres were not in an "overbought" condition nor had they engaged in the alleged practice of "dissipating" products by exhibiting films for shortened runs (thereby using more feature pictures) for the alleged purpose of causing fewer pictures to be available for licensing by the defendant distributors to the Center theatre.

32. In licensing and booking motion pictures, including feature motion pictures, for the respective Carolina, Imperial, and Broadway theatres, the defendant, H. F. Kincey or other agents and employees of Wilby-Kincey Service Corporation under his supervision, licenses each picture for a particular theatre and an agreement is reached with the distributor of the picture licensed for that theatre solely; said license is not conditioned upon the licensing of said picture or any other picture for any other theatre, nor is more than one picture licensed at one time. The pictures licensed for exhibition in either the Carolina, Imperial, or Broadway theatres are licensed picture by picture, and theatre by theatre, after independent negotiations with the distributor of the picture for which a license is sought. Each other license is negotiated for and entered into independently, regardless of whether said picture being licensed has been or may be subsequently licensed for exhibition in another theatre to which the defendant H. F. Kincey or the agents and employees of the Wilby-Kincey Service Corporation renders licensing and booking service.

33. The evidence clearly indicates that all of the distributor defendants, from a practice adopted and of long standing and based on experience follows a similar procedure, for instance, Paramount Film Distributor Corporation maintains and operates a branch office in the City of Charlotte, North Carolina to which are transported in inter-state commerce motion picture film produced by Paramount Pictures, Incorporated, in California, New York and other states, with branch offices under the supervision and control of a branch manager who resides in Charlotte, North Carolina, and who is responsible for the solicitation of offers from exhibitors for the license to exhibit the pictures distributed by this said defendant. Upon receiving said offers as they are made the branch manager forwards them to the office of the General Sales Manager of the defendant in New York City with his recommendation with respect to the merits of each offer. A de-

cision to accept or reject any of these offers is made in the office of the General Sales Manager in New York City. Thereafter the branch manager in Charlotte is notified of the decision made in New York City and if offer made is accepted by the General Sales Manager, the branch manager is thereupon responsible for the delivery of a license agreement to the successful exhibitor and further responsible for the subsequent distribution of the licensed picture to various licensees in the different towns located in North Carolina. The above formula from the evidence seems to have been followed in the above respect by all of the defendants with the exception of Loew's Incorporated, and it only varies therefrom in that the branch manager in Charlotte has the authority without any contract to a superior officer to make contracts for the distribution of Loew's pictures to theatres located in North Carolina, and this independent policy on the part of the branch manager seems to have been the policy pursued by Loew's for some years. As a result of a request however, by the plaintiffs, H. B. Meiselman on behalf of the Center theatre, the defendant, Loew's, on September 2, 1948, instituted a system of licensing its feature motion pictures to exhibitors in Charlotte on the basis of competitive bids. This competitive bidding system was instituted somewhere in the neighborhood of five weeks before the plaintiffs Center theatre was opened. Under this system after a picture has been trade shown a letter offering an opportunity to bid competitively for it is sent both to the plaintiffs and the defendant exhibitors. Each bid received at the exchange is kept sealed in a safe place until a day after the dead line fixed by the lettrs offering the opportunity to bid, then the bids are opened. The branch manager then has copies made of the bid letters and sends those copies to the home office of Loew's with a summary of each bid along with his recommendation as to the exhibitor he thinks the high bidder. At the home office the bids are thoroughly analyzed and the branch manager notified of the decision as to which bid is best. The branch manager thereupon in turn notifies the successful bidder of the acceptance of his bid and conversely notifies those whose bids were not accepted that they had failed. Since the institution of this system of, competitive bidding by the defendant Loew's in the City of Charlotte, the plaintiffs have had the same and equal opportunity to bid and negotiate for the licensing of Loew's pictures as have the defendants. Since the opening of the Center on October 7th they have been successful on the competitive bid basis of having awarded to them seven feature pictures while on the same basis the Carolina, Imperial and Broadway have been awarded eight pictures. I find nothing to substantiate the charge that this system has been manipulated by Loew's so as to favor the Carolina, Broadway and Imperial. I further find that in initiating this system that the defendant Loew's in Charlotte did so in the exercise of its sole decision and judgment and did not conspire, contract or combine with any other defendant in its choice to do so.) (At the close of all the evidence at the hearing in Charlotte on March 11th, the plaintiffs in view of this showing by Loew's took a voluntary nonsuit as to the defendant, Loew's.)

34. Said Paramount Film Distributing Corporation, through its branch office has followed an independent policy of licensing film products of Paramount Pictures, Inc., in Charlotte, North Carolina, to the Carolina, Imperial, and Broadway theatres exclusively on first-run in Charlotte, said theatres being operated by subsidiary corporations of which Paramount Pictures, Inc., owns all capital stock except for three qualifying shares. Paramount Film Distributing Corporation, prior to the opening of the Center theatre by the plaintiffs, advised said plaintiffs that all Paramount film products would be continued to be licensed for first-run exhibition in Charlotte North Carolina, to the theatres in which Paramount Pictures, Inc., owned a stock interest.

35. The defendant, Columbia Pictures Corporation following the same formula of disposing of its products produced by it as is the formula set out in the preceding paragraph with respect to Paramount and the findings made, and has followed and prac-

ticed its own independent policy of licensing feature motion pictures in Charlotte by negotiating with the representative of each individual exhibitor privately and separately, including all four of the theatres involved in this controversy, the Carolina, Imperial, Broadway and plaintiffs' Center, and pursuant to this independent policy the plaintiffs, during the first two months of their operation licensed from Columbia two first run pictures and had the opportunity of licensing other feature pictures which had not theretofore been exhibited in Charlotte. It is further found as a fact that at the time of the hearing on this motion on March 10th the defendant, Columbia had contracted to license to the plaintiffs five feature pictures which had not heretofore been exhibited in the City of Charlotte and that in making these contracts with the plaintiffs that Columbia has not discriminated against the Center to the benefit of either the Carolina, Imperial or Broadway.

36. The defendant, Warner Bros. Picture Distributing Corporation, as was found in a preceding paragraph of these facts has pursued through the years a course and policy set out in finding of fact No. 33, as made in the Paramount instance in the distribution of its pictures in the Charlotte area, which is the same and seemingly has been followed for years by all of the distributors with the exception of Loew's. Warners offers evidence and contends that in good faith it feels that to license its top-quality pictures for first run exhibition in any neighborhood theatre in Charlotte or in any other place of comparative size and like standing would be injurious to its interest and contends that the downtown location in Charlotte from the standpoint of theatre-going patronage is infinitely superior to that of a neighborhood theatre such as it contends the Center to be, and that since it invariably licenses its top quality pictures to the Carolina and Imperial on a percentage basis, it believes in good faith that it would be a distinct financial loss to license them to a neighborhood theatre at a loss and that the prestige built up through the years by theatres serviced by its Charlotte Branch office is such

that to license its top feature pictures first run would naturally affect the psychology of theatre owners in the Charlotte territory. That there are approximately 515 theatres in North and South Carolina served from the Charlotte office. Warners has offered to license some pictures of lesser quality to plaintiffs for exhibition first run in Charlotte, one picture being "Smart Girls Don't Talk" and that in line with this idea the defendant Warner has offered to license another picture "The Decision of Christopher Blake" to plaintiffs for first run in Charlotte at the Center theatre.

37. The defendant, Twentieth Century-Fox Film Corporation pursues a like and similar policy with respect to the disposition of its products as produced, as has been the policy of the defendants with the exception of Loew's Inc., and pursuing this formula its policy has not been to license feature pictures to subsidiary or neighborhood theatres for first run in the Charlotte territory. It, like the other defendants, believing that such a policy would produce less income than would come to it from the sale of its products to one of the first run theatre houses in Charlotte and with that idea in mind has declined to offer its better pictures as first run to the plaintiffs' theatre but did offer the plaintiffs the opportunity to license nine pictures distributed by it for first run exhibition at the Center.

38. The defendant, RKO Radio Pictures, Inc., has consistently followed the same formula as has been theretofore found with respect to Paramount, Warner Bros. Picture Distributing Corporation, Columbia, and in fact the other defendants, with the exception of Loew's in negotiating for and affecting the sale of its products, and has followed its own independent policy of licensing its feature pictures in Charlotte by negotiating with representatives of each individual exhibitor, prior and separately, including representatives of the Carolina, Imperial, Broadway and plaintiffs' Center theatre. As a result of independent negotiations with plaintiffs beginning with the opening of the Center on October 7th, and ending on December 7th, the date on which this action was instituted, the plaintiffs had licensed and ex-

hibited two first-run pictures of RKO and had been given opportunity to make offers and did make other offers thereunder for features pictures which had not theretofore been exhibited in Charlotte. Prior to the hearings on March 10th the plaintiffs had licensed and exhibited one additional RKO feature first run at the Center theatre. And at the time of these hearings plaintiffs had licensed two additional feature pictures for first run in Charlotte.

39. The defendant, United Artists Corporation maintains a branch office in the City of Charlotte for the Carolinas area in which it receives, in inter-state commerce, motion picture films which are produced in the United States and in foreign countries by independent producers who are not affiliated with any of the defendants herein, this defendant being purely and simply a distributor and having no actual or financial connection with any of the motion picture producers in America. The court finds from the evidence that the method specifically prescribed in Paragraph No. 33 of these findings of fact with respect to Paramount and the other defendants thereafter set out, with the exception of Loew's, is a method adopted and placed in use by this defendant in the distribution of the films which it either buys from the producer or acts as agent in distribution. The evidence indicates and the court finds such as a fact that United Artists has followed its own independent policy of licensing its feature motion pictures in Charlotte in that negotiating with each individual exhibitor separately and privately, including the four theatres herein, and as a result of following this individual policy and negotiating separately with each exhibitor the plaintiffs were offered the opportunity to negotiate for two pictures which this defendant had for distribution prior to the institution of this action, these pictures had not been theretofore exhibited in Charlotte, but the evidence tends to show that they were not awarded to the plaintiffs on account of this defendant being of the opinion that a greater revenue would be obtainable from the offer made by the theatre ultimately showing the picture. Prior to the last hearing on this motion this defendant had licensed one picture to the plaintiffs' Center theatre which was a picture first run in Charlotte.

40. The defendant named as the Universal Film Exchanges, Inc., likewise maintains an office in Charlotte for the use of the Charlotte territory and has followed the same accepted method of contact with exhibitors, receiving offers, forwarding the offers as received to the General Sales Manager in New York City, with recommendations with respect to the merit of the various offers, and leaving the decision ultimately to be determined by the General Sales Manager in New York City, and when determined, the branch manager upon notification then attends to the business of finally delivering the films to the successful exhibitor, and receiving compensation therefor. The court finds this is similar in every instance and seemingly an accepted practice. After learning of the desire of the plaintiffs in the operation of the Center theatre to secure feature pictures the court finds that this named defendant, beginning several months before the actual opening of the Center contracted the plaintiffs and offered its pictures to the plaintiffs and requested bids. That shortly prior to October 7, 1948, Universal had available for licensing to various exhibitors three feature pictures which would be on first run when exhibited in Charlotte, namely, "Saxon Charm", "Love o'Mary", and "One Touch of Venus", and licensed these three pictures to the plaintiffs for exhibition and they were actually shown in October and November, 1948, in the Center theatre. That though all other Universal Pictures unplayed on the date of the opening of the Center had been licensed for exhibition at other theatres on the request of the plaintiffs this defendant obtained releases of two pictures which had previously been licensed and licensed them first run to the Center and as such there were exhibited therein. These two pictures, from the evidence, appear to be "Mr. Peabody and the Mermaid" and "Are you with it", and subsequently on two more Universal pictures being available for first run they were licensed to the plaintiffs on competitive bids and were shown in the Center.

These from the evidence appear to be "Countess of Monte Crisco" and "Mexican Hayride". Following the institution of this action, "Act of Murder" another picture was licensed to the plaintiffs and was exhibited in the Center theatre on March 6th to March 12th, 1949. In fact, every feature picture of this defendant which was available from the period of the opening of the Center on October 7, 1948 to the final hearing of this motion in March, 1949, was licensed to the plaintiffs and no feature pictures of this defendant were licensed during that period of time to the three named theatres in this action or to any competitor of the Center. At the time of the hearing of this motion on March 10, 1949, the evidence discloses and the court finds as a fact that the plaintiffs had bid on additional feature motion pictures which had not theretofore been exhibited in Charlotte first run, and that these items of business were outstanding as unfinished at the time of the final hearing of the evidence in the lawsuit.

41. There is no evidence before the Court from which it would be possible to determine or estimate, the amount of profits the Center theatre might have made, if any, if the feature motion pictures of the defendants Paramount Film Distributing Corporation, Twentieth Century-Fox Film Corporation and Warner Bros. Pictures Distributing Corporation had been licensed to the plaintiffs' Center theatre. The record being silent on this phase of the case.

42. There is no evidence before the Court from which it can be determined that any of the defendants required the plaintiffs' Center theatre to pay unreasonable or discriminatory film rentals for feature motion pictures actually licensed to it or that any feature motion pictures were licensed to the Carolina, Imperial, or Broadway theatres by any defendant on any terms which, at the time of considering offers for said licenses, the said defendant did not believe would return more income to it than the offered terms of the Center theatre.

43. The evidence establishes that the Carolina, Imperial and Broadway theatres are located in the heart of the business and shopping center of the City of Charlotte; that the public transportation systems converge close to these theatres; that these theatres draw their patronage from all areas of the city and the surrounding territory; whereas the Center theatre is located 1.9 miles from such shopping and trade center of the city and draws its patronage primarily from the immediate residential district of the city which is served by only one bus line. The prestige and reputation of motion pictures in the Charlotte area has long been regarded by the defendant distributors and the public as dependent upon their exhibition, first run, in one of these downtown theatres. The Center theatre, from the evidence, must be classified as a neighborhood theatre and before erecting it, the plaintiffs were familiar with the fact that some of the distributors defendants preferred to license their pictures, first run in the downtown theatres rather than in a neighborhood theatre such as the Center.

44. The defendant Twentieth Century-Fox Film Corporation, in refusing to license its better feature motion pictures first run in Charlotte to the plaintiffs' Center theatre, has done so in the exercise of its freedom to contract with whomsoever it may desire and has not violated the anti-trust laws in doing so.

45. The defendant Warner Bros. Pictures Distributing Corporation in refusing to license its top quality feature motion pictures first run in Charlotte to the plaintiffs' Center theatre, has done so in the exercise of its freedom to contract with whomsoever it may desire and has not violated the anti-trust laws in doing so.

46. The defendant, RKO Radio Pictures, Inc., in declining to institute competitive bidding for its first-run pictures in Charlotte between the neighborhood Center theatre and the downtown Carolina, Imperial and Broadway theatres has done so in the exercise of its own independent sound business judgment.

47. Paramount Film Distributing Corporation in electing to license the pictures distributed by it and which are produced

by Paramount Pictures, Inc., this distributor's parent corporation, to the Carolina, Imperial and Broadway theatres has done so in the exercise of its legal right to choose its licensees; its election to license the pictures produced by Paramount Pictures Inc., to the Carolina, Broadway theatres operated by the defendant Charlotte Amusement Company, which is wholly owned by Paramount Pictures, Inc., and to the Imperial theatre operated by the defendant Strand Theatres, Incorporated, which is wholly owned by Paramount Pictures, Inc., has done so independently, and in doing so has not been a party to any contract, combination or conspiracy with any other defendant in the restraint of trade nor a party to any contract, combination or conspiracy with any other defendant to restrain or prevent the plaintiffs' Center theatre from obtaining feature motion picture films from any other defendant or any person, firm or corporation.

48. I have given this case a great deal of study and a considerable amount of time in undertaking to get a comprehensive grasp on the facts, and the law applicable. The record proper consists of approximately six hundred pages of evidence given orally in the court room, and when one considers the pleadings, the affidavits, the exhibits, and gives study to the arguments heard and subsequently read and undertakes to thoroughly digest the proposed findings of fact and conclusions of law submitted by the parties, and gives study to the appearance and demeanor of the witnesses on the stand, it should appear that one ought to have a fairly good grasp of the factual and legal situation. I hope I have. I recite this in line with my proposed finding. I am of the opinion and thereupon find as a fact, and it is my studied judgment that none of the defendants has agreed, contracted, combined or conspired with any of the other defendants to prevent or restrain the Center theatre from obtaining feature pictures or any other defendant or any person, firm or corporation, nor do I find that any defendant has agreed, contracted, combined, or conspired with any other defendant or any other person, firm

or corporation to confer upon the Carolina, Imperial or Broadway or either or all of them any monopolistic position in the exhibition of feature motion pictures first run in Charlotte, or by so doing to place the Center theatre in an inferior position in relation to the Carolina, Imperial or Broadway or either of all of them. From the evidence and a consistent study thereof I find that what has been done has been done by the defendants individually, acting independently, in the distribution of their feature pictures.

To undertake to make their case the plaintiffs offered as witnesses Mr. Smart, the buyer, and Mr. Kincey the secretary-treasurer and manager, and six of the branch managers of various defendants; a seventh manager was under subpoena and in the court room throughout the trial. I observed their demeanor, etc., and must give weight to their testimony for the purpose of this motion. They specially deny any collaboration, combination, or conspiracy, and their evidence makes for the jury's finding. I therefore find an independent action and thought rather than a conspiracy or combination which would indicate a violation of the Sherman and Clayton Acts.

49. Said Rule No. 52, Federal Rules of Civil Procedure, 28 U.S.C.A., gives faith, credit and weight to the findings of fact and conclusions of law, as made under the practice; I have tried to be very careful in making them, so that the Appellate Court may have a fair and impartial and I hope comprehensive picture of the evidence offered by the parties.

50. The legal effect of the motion of the plaintiffs, if allowed would at least be to require the distributor defendants to offer their feature motion picture products either on a competitive basis or on a flat rental and to all exhibitors in Charlotte. This would likely deprive the defendants of their freedom of contract and very likely would have that same effect if offered on a flat rental basis. To require competitive bidding would obviously produce a situation seemingly condemned by the courts in substance, therefore I would not want the court to assume this position or task prior

to a time when it would be found that such would be definite and certain and continuous or after a final determination on the merits.

Upon the Foregoing Findings of Fact, the Court concludes as a matter of law as follows:

1. Threshed out and with all the chaff scattered the sole question for the purpose of the motion made in this case as stated in a recent decision of the Court of Appeals, Bordonaro Bros. Theatres, Inc. v. Paramount Pictures, Inc., 2d Cir., 176 F.2d 594, is "whether the admitted inability of plaintiffs to obtain first-run films for their theatre sprang from a conspiracy to exclude them from the first-run field or whether it was a natural result of independent business judgments as to the relative value of their exhibition facilities." This seems to be the question asked in all of these cases. I answer that question for the purpose of these conclusions of law that it springs from the independent business judgment exercised by the defendants, and in my discretion I am satisfied that at this time a preliminary injunction should not be granted.

2. ▆▆ That the plaintiffs and defendants in licensing motion pictures are engaged in interstate commerce, within the territorial jurisdiction of this Court.

3. That the Court has jurisdiction of all parties and of the subject matter of the action.

4. That the plaintiffs have not established that they have suffered irreparable loss or damage or that any danger of irreparable damage or loss to the plaintiffs is immediate calling for the issuance by the Court of a preliminary injunction.

5. That the preliminary injunction sought by the plaintiffs' motion would require the Court to radically alter the status existing between the plaintiffs and each respective defendant at the time of the institution of this action.

6. That this entire case is at issue, and the plaintiffs' rights depend upon disputed questions of fact and law and to grant the plaintiffs' motion would be tantamount to granting the injunctive relief prayed for upon a trial on the merits. The Court in the exercise of its discretion concludes that a preliminary injunction is not necessary for the protection of any rights the plaintiffs may finally establish upon the trial of this case upon its merits.

7. That the plaintiffs' motion for a preliminary injunction should be denied, and it is so ordered. Counsel will submit decree.