**Commonwealth ex rel. Camelot Detective Agency, Inc., Petitioner *v.* Specter.**

Argued January 16, 1973. Before JONES, C. J., EA-
GEN, O'BRIEN, ROBERTS, POMEROY and MANDERINO, JJ.

November 30, 1972, vacated; reargument refused April 28, 1973.

*Harold L. Randolph,* with him *Ronald J. Brockington,* for petitioner.

*Paul R. Michel,* Deputy District Attorney, with him *David Richman* and *Milton M. Stein,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for respondent.

OPINION BY MR. JUSTICE ROBERTS, March 29, 1973:

Petitioner, Camelot Detective Agency, Inc. [hereinafter, Camelot] filed a petition for writ of prohibition seeking to restrain the Philadelphia investigating grand jury of June Term, 1972, from continuing to make inquiry of Camelot, its officers and employees. On November 30, 1972, we stayed the proceedings pending disposition of this petition. Having reviewed the entire record, we now deny the petition and vacate the stay of proceedings.

Petitioner asserts that the allegations presented in the district attorney's petition requesting a grand jury investigation and in Judge TAKIFF's charge to the jury are too vague to warrant the calling of an investigating grand jury. Examination of the district attorney's petition, however, satisfies us that the minimum requisites for obtaining a grand jury investigation were satisfied.

While a "grand jury has broad investigative powers to determine whether a crime has been committed and who has committed it," *United States v. Dionisio,* 410 U.S. 1, 15, 93 S. Ct. 764, 772 (1973), certain restrictions have been placed upon the grand jury's investigation. In *McNair's Petition,* 324 Pa. 48, 61, 187 Atl. 498, 504 (1936), this Court said: *"A grand jury's investigation cannot be a blanket inquiry to bring to light supposed grievances or wrongs for the purpose of criticizing an officer or a department of government, nor may it be instituted without direct knowledge or knowledge gained from trustworthy information that criminal conspiracy, systematic violations of the law or other criminal acts of a widespread nature prevail, and at least one or more cognate offenses should exist on which to base a general investigation.* The investigation cannot be aimed at individuals primarily, as such, nor at the commission of ordinary crimes (Commonwealth v. Zortman, supra; Commonwealth v. Reedy, 21 D. & C. 524; In re Alleged Extortion Cases, supra), but should be of matters of criminal nature wherein public officers or the interests of the general public are involved." (Footnote omitted.) (Emphasis added.) The Court further observed, "The grand jury must not be set upon fruitless searches, founded upon mere rumor, suspicion or conjecture. . . . There must be a sound solid basis on which to proceed." Id. at 62, 187 Atl. at 505. See also *Special Grand Jury Case,* 397 Pa. 254, 154 A. 2d 592 (1959). Again, in *Dauphin Co. Grand Jury Investigation Proceedings (No. 1),* 332 Pa. 289, 307, 2 A. 2d 783, 792 (1938), this Court stated, ". . . before the District Attorney or the court below again proceed to present or to order a grand jury investigation . . . there must be presented some *credible evidence from a trustworthy source* that a violation of the criminal law has taken place in each of the several charges contained in the District Attorney's petition." (Emphasis added.)

More recently, in *Commonwealth v. McCloskey*, 443 Pa. 117, 137 n.26, 277 A. 2d 764, 774 n.26, cert. denied, 404 U.S. 1000, 92 S. Ct. 560 (1971), we summarized the requirements for calling an investigating grand jury: "It has been suggested that the minimum requisites for obtaining a grand jury investigation are: (a) the subject matter of the investigation must affect the members of the community as a whole, rather than as individuals; (b) the investigation must be aimed at conditions and not primarily at individuals; (c) the ordinary processes of the law must be inadequate to cope with the problems; (d) the investigation must have a defined scope, be aimed at crimes, and supported by information indicating the existence of a system of related crimes or a widespread conspiracy; (e) information as to the crimes must come from direct knowledge or a trustworthy source."

Here, respondent, District Attorney Arlen Specter, averred in his petition that a preliminary investigation revealed a "system of numerous violations of penal laws relating to vice and official corruption involving narcotics and dangerous drugs, liquor and illegal gambling. . . ." The petition further alleged that this systematic criminal activity has "injuriously affected the public health, safety, morals and welfare of citizens of the City of Philadelphia and the Commonwealth of Pennsylvania. . . ." Additionally, the district attorney alleged that the ordinary legal processes cannot readily cope with the investigation of these conditions because numerous individuals have refused to provide the information requested by respondent. Furthermore, unlike the petition in *Special Grand Jury Case*, supra, which merely recited general averments of widespread crime, the petition, here, described specific incidents of criminal activity. Finally, the detailed information supporting the petition is alleged to have been obtained from "direct knowledge or a trustworthy source." *Com-*

*monwealth v. McCloskey,* supra at 137, n.26, 277 A. 2d at 774 n.26. Thus, we must conclude that the district attorney's petition satisfied the minimum requisites and that respondent, Judge Harry TAKIFF, properly convened an investigating grand jury.

Petitioner further contends that its President, Edgar Campbell, Jr., was deprived of his rights under the United States and Pennsylvania Constitutions by the court's failure to permit the presence of counsel in the grand jury room or, alternatively, by its failure to permit Campbell to consult with his attorney outside the room after each question.[1] This argument was unequivocally rejected by this Court in *Commonwealth v. McCloskey,* supra. There, in holding that a grand jury witness cannot insist on the presence of his counsel in the grand jury room, we said: "Neither Escobedo nor Miranda were even remotely concerned with right to counsel before an investigating grand jury. The interpretation urged by appellees that counsel be accessible at all times during a witness's appearance is an unwarranted extension of the teaching of those decisions." Id. at 142, 277 A. 2d at 777. Accord, *In Re Groban's Petition,* 352 U.S. 330, 333, 77 S. Ct. 510, 513 (1957) ; *United States v. Daniels,* 461 F. 2d 1076 (5th Cir. 1972) ; *In Re Grumbles,* 453 F. 2d 119 (3d Cir. 1971), cert. denied, 406 U.S. 932, 92 S. Ct. 1806 (1972) ;

---

[1] Petitioner herein, Camelot Detective Agency, Inc., is a corporation and as such may not assert rights under the Fifth Amendment. *Campbell Painting Corp. v. Reid,* 392 U.S. 286, 289, 88 S. Ct. 1978, 1980 (1968) ; *Curcio v. United States,* 354 U.S. 118, 77 S. Ct. 1145 (1957) ; *United States v. White,* 322 U.S. 694, 64 S. Ct. 1248 (1944) ; *Hale v. Henkel,* 201 U.S. 43, 26 S. Ct. 370 (1906). Moreover, petitioner may not assert the alleged deprivation of constitutional rights of its officers and employees. See *Commonwealth v. Butler,* 448 Pa. 128, 131, 291 A. 2d 89, 90 (1972). However, since Edgar Campbell, Jr., Camelot's President, was subpoenaed both individually and in his corporate capacity, and since the petition and briefs discuss Campbell's dual role, we will address the merits.

*United States v. George,* 444 F. 2d 310 (6th Cir. 1971) ; *Gollaher v. United States,* 419 F. 2d 520 (9th Cir. 1969), cert. denied, 396 U.S. 960, 90 S. Ct. 434 (1969) ; *United States v. Corallo,* 413 F. 2d 1306 (2d Cir. 1969), cert. denied, 396 U.S. 958, 90 S. Ct. 431 (1969) ; *United States v. Levinson,* 405 F. 2d 971 (6th Cir. 1968), cert. denied, 395 U.S. 958, 89 S. Ct. 2097 (1969).

Moreover, in *McCloskey* we specifically rejected the notion that a witness may leave the room and consult with his attorney after each question. There the Court stated: "We reiterate our belief that to allow a witness to leave the grand jury room and consult with his attorney at the door prior to responding to every question would cause undue delay and all but terminate the institution of the investigating grand jury. Such a procedure which would not be subject to any court supervision, would be an invitation to evasive and stalling tactics." *Commonwealth v. McCloskey,* supra at 145, 277 A. 2d at 778.

Rather, this Court approved the following procedure: "In seeking to balance society's interest in the grand jury's freedom of orderly inquiry and a witness's right to exercise his privilege against self incrimination knowingly and intelligently, we believe that proper procedure is for the court supervising the investigating grand jury to instruct a witness when administering the oath that while he may consult with counsel prior to and after his appearance, he cannot consult with counsel while he is giving testimony. However, the witness should also be informed that should a problem arise while he is being interrogated, or should he be doubtful as to whether he can properly refuse to answer a particular question, the witness can come before the court accompanied by counsel and obtain a ruling as to whether he should answer the question." Id. at 143, 277 A. 2d at 777. See also *Commonwealth v. Cohen,* 221 Pa. Superior Ct. 244, 289 A. 2d 96 (1972) (allocatur de-

nied), cert. denied, 409 U.S. 981, 93 S. Ct. 315 (1972) (attorney entitled to *McCloskey* instructions).

Respondent, Judge TAKIFF, carefully complied with the procedure of *McCloskey.* The relevant portions of his instructions to the witness are set forth in the margin.[2]

---

[2] Judge TAKIFF instructed Edgar Campbell, Jr., as follows:

"THE COURT: I am Judge TAKIFF of the Court of Common Pleas. I have been assigned by the President Judge to supervise the Special Investigating Grand Jury which has subpoenaed you to appear as a witness before it. You have been subpoenaed because the investigation has focused on your activities and you are suspected of having violated certain laws of the Commonwealth of Pennsylvania.

"A witness in your circumstances is entitled to certain rights and is subject to certain duties which I will now explain to you.

"First, with respect to your rights, you have the right to the advice and the assistance of counsel. This means that you have the right to obtain the services of an attorney and to consult with him in all matters pertaining to your appearance before the Grand Jury and all testimony before the Grand Jury, including the right to discuss with your counsel fully and completely all questions and answers that are developed during the course of your appearance before the Grand Jury. You may consult with your attorney before you testify and after you testify and during any recesses in the course of your examination. However, under the practice, your attorney is not permitted to accompany you inside the Jury room while you are actually in the process of being interrogated.

"Do you understand this right, sir?

"MR. CAMPBELL: Yes, I do.

. . .

"THE COURT: Fine. Of course, as you know, you have the full right to consult with Mr. Johnson and to continue consultation with him throughout your entire contact with the Grand Jury.

"Secondly, I should advise you that you have the right to refuse to answer any questions whatsoever. You may give a reason for doing so if you desire, but you are not obliged to do so. If you answer some questions or begin to answer any particular question, this does not mean that you necessarily must thereafter continue either to answer other questions or indeed even to complete the answer to a question which you start to answer. You have the right to refuse to answer and the right to remain silent. You may stop

Notwithstanding the court's clear compliance with *McCloskey*, petitioner, relying on *Commonwealth v. Columbia Inv. Corp.*, 222 Pa. Superior Ct. 30, 292 A. 2d 533 (1972), asserts that Campbell is entitled to appear with his attorney in the grand jury room. In *Commonwealth v. Columbia Inv. Corp.*, supra, our Superior Court stated that *McCloskey* applies only to "mere witnesses" before the grand jury. The Superior Court held that individuals "in the status of accused persons" are entitled to the presence of counsel in the grand jury room. Id. at 35, 292 A. 2d at 535. Petitioner's reliance on *Columbia Inv. Corp.*, is misplaced for at the time Campbell was called to testify, he was not "in the status of [an] accused [person] about to be recommended for indictment. . . ." Id.[3]

---

answering a question at any time. Any answer that you do give can and may be used against you either for the purpose of indictment or prosecution or both.

"Do you understand this right to remain silent?

"Mr. Campbell: Yes, I do.

"The Court: Thirdly, if any problem arises while you are being questioned such as if you are uncertain as to whether you may lawfully refuse to answer any particular question or any other problem that may arise during the course of your appearance before the Grand Jury, you have the right to appear before me, either alone or accompanied by your attorney, and I will then rule on that matter, whatever it may be. That is part of my responsibility as the judge in charge of the Special Investigating Grand Jury, and I am available to rule on any problems that may arise at any time.

"Do you understand that, sir?

"Mr. Campbell: Yes, I do."

[3] Allocatur was granted in *Commonwealth v. Columbia Inv. Corp.*, 222 Pa. Superior Ct. 30, 292 A. 2d 533 (1972), on December 5, 1972. We need not now decide the vitality of that decision. But see *Commonwealth v. McCloskey*, 443 Pa. 117, 120, 277 A. 2d 764, 766 (1971), cert. denied, 404 U.S. 1000, 92 S. Ct. 560 (1971), where we stated that the issue presented was: ". . . whether, or to what degree, a subpoenaed witness *and potential defendant* before an investigating grand jury is entitled to the assistance of counsel to

Finally, petitioner contends that its officers may not be subpoenaed to produce certain corporate books and records nor compelled to testify as to the whereabouts of those books and records. Petitioner relies on *Curcio v. United States,* 354 U.S. 118, 77 S. Ct. 1145 (1957), which held that the custodian of corporate records may assert the Fifth Amendment privilege and refuse to *testify* as to the whereabouts of such records if the testimony would incriminate him. However, the United States Supreme Court there specifically noted that the custodian may not refuse to *produce* the subpoenaed records even if the records would incriminate the custodian. The Supreme Court said, ". . . the books and records of corporations cannot be insulated from reasonable demands of governmental authorities by a claim of personal privilege on the part of their custodian." Id. at 122, 77 S. Ct. at 1148.[4] See also *United States v. White,* 322 U.S. 694, 64 S. Ct. 1248 (1944); *Wilson v. United States,* 221 U.S. 361, 31 S. Ct. 538 (1911). The Court explained the distinction between compelling the custodian to testify and compelling the custodian to produce the records: "The compulsory production of corporate or association records by their custodian is readily justifiable, even though the custo-

---

aid him in asserting his right against self incrimination guaranteed both by the Fifth Amendment, applied to the states through the Fourteenth Amendment, and Article I, Section 9 of the Pennsylvania Constitution." (Emphasis added.) See also *United States v. George,* 444 F. 2d 310 (6th Cir. 1971) (grand jury witness who already had been indicted not entitled to presence of counsel in grand jury room). It is also interesting to note that the United States Supreme Court recently stated, "The obligation to appear is no different for a person who may himself be the subject of the grand jury inquiry." *United States v. Dionisio,* 410 U.S. 1, 10 n.8, 93 S. Ct. 764, 769 n.8 (1973).

[4] It is equally well settled that a custodian of corporate records cannot refuse to produce such records because they would incriminate the corporation. *Hale v. Henkel,* supra, note 1.

dian protests against it for personal reasons, because he does not own the records and has no legally cognizable interest in them. However, forcing the custodian to testify orally as to the whereabouts of nonproduced records requires him to disclose the contents of his own mind. He might be compelled to convict himself out of his own mouth. That is contrary to the spirit and letter of the Fifth Amendment." *Curcio v. United States,* supra at 128, 77 S. Ct. at 1151-52.

Thus, the custodian of petitioner's records may properly refuse to testify as to the whereabouts of the records if such testimony would be personally incriminating. However, the custodian may not refuse to produce the subpoenaed corporate books and records.

Accordingly, there is no occasion to grant the extraordinary writ of prohibition. As this Court said in *Carpentertown Coal & Coke Co. v. Laird,* 360 Pa. 94, 102, 61 A. 2d 426, 430 (1948) : "The writ of prohibition is one which, like all other prerogative writs, is to be used only with great caution and forbearance and as an extraordinary remedy in cases of extreme necessity, to secure order and regularity in judicial proceedings if none of the ordinary remedies provided by law is applicable or adequate to afford relief. It is a writ which is not of absolute right but rests largely in the sound discretion of the court."

Writ of prohibition denied and stay of proceedings granted, November 30, 1972, vacated.

Mr. Justice EAGEN concurs in the result.

Mr. Justice NIX took no part in the consideration or decision of this case.

———

DISSENTING OPINION BY MR. JUSTICE MANDERINO:

I dissent for the reasons stated in the dissenting opinion of Mr. Justice EAGEN (joined by Mr. Chief Justice JONES) in *Commonwealth v. McCloskey,* 443 Pa. 117, 277 A. 2d 764 (1971). A person called before an

investigating grand jury is constitutionally entitled to the assistance of counsel at all times. Particularly is this true in this case where the court informed the witness that ". . . You have been subpoenaed because the investigation has focused on your activities and you are suspected of having violated certain laws of the Commonwealth of Pennsylvania. . . ."

I cannot accept the view that a person arrested for the commission of a crime has *more* constitutional rights than a citizen who has not yet been arrested. See *Escobedo v. Illinois*, 378 U.S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758 (1964) and *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966).

If a witness is given the benefit of the constitutional protections to which he is entitled, there is no need to consider other questions raised concerning the grand jury investigation at this time. I would deny the petition which seeks to stop the grand jury investigation, but prohibit the questioning of any witness unless he is permitted the advice of counsel at all times.