334 A.2d 619

John Robert **WOODS**

v.

**Beth DUNLOP et al.**

**Appeal of Anthony J. PIVIROTTO.**

Supreme Court of Pennsylvania.

Argued Oct. 10, 1974.

Decided March 18, 1975.

36

38

M. David Turets, Pittsburgh, for appellant.

John H. Bingler, Jr., Pittsburgh, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROB-ERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

This is an appeal from the order of the court of common pleas adjudging appellant Anthony Pivirotto to be in contempt of court and ordering him confined until he purged himself of contempt. We affirm.

Beginning on February 28, 1971, the Pittsburgh Press published a series of five feature articles detailing the activities of a tax-exempt fraternal order alleged to be one of Pittsburgh's largest lessors of low-income housing. The articles also discussed the affairs of John Robert Woods, the lessor's managing agent. Mr. Woods, dis-

pleased by certain representations made about him in the articles, instituted a defamation action on December 3, 1971, against the reporters who wrote the stories, an editor of the newspaper, the Pittsburgh Press, and Scripps-Howard Publications, Inc.

During pre-trial discovery, defendants served appellant with a subpoena duces tecum directing him to appear at a deposition and produce certain records of Safeguard Investment Co., a corporation of which Pivirotto was president. Mr. Woods was allegedly an employee of Safeguard.

On May 7, 1974, appellant appeared at a court-supervised deposition. In the course of the deposition, it was determined that appellant had not produced all the documents requested in the subpoena and the deposition was adjourned. On May 10, 1974, the deposition was reconvened, again before the court. At this time, a large metal filing cabinet, apparently containing the requested records, was wheeled into the courtroom. After appellant was asked a number of questions, defense counsel requested appellant to open the cabinet, remove the first document, and identify it. Appellant refused. The court ordered appellant to comply. Appellant, relying on his Fifth Amendment privilege against self-incrimination, remained obstinate. Thereupon, the court adjudged appellant to be in "direct criminal contempt," and ordered him confined until he purged himself of contempt by complying with the order to identify the documents. This direct appeal ensued.[1]

[ ] Before reaching the merits of appellant's claim, we note that this appeal was improvidently taken to this Court. Although the deposition court deemed its contempt citation to be an adjudication of criminal contempt, that classification was erroneous. The character

1. Shortly after his confinement, appellant was released on his own recognizance pending appellate review of the contempt adjudication.

and purpose of the adjudication clearly render it civil rather than criminal contempt.[2]

■ Under the Appellate Court Jurisdiction Act of 1970, this Court may review civil contempt sanctions imposed in cases directly appealable to this Court. Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(5), 17 P.S. § 211.202(5) (Supp. 1974);[3] *Cassella v. Pierce*, 447 Pa. 512, 291 A.2d 101

2. In determining whether a contempt citation is civil or criminal contempt our guide is the dominant purpose of the court. *Knaus v. Knaus*, 387 Pa. 370, 376, 127 A.2d 669, 672 (1956). See *East Caln Twp. v. Carter*, 440 Pa. 607, 612, 269 A.2d 703, 706 (1970); *Brocker v. Brocker*, 429 Pa. 513, 522, 241 A.2d 336, 338 (1968); *Commonwealth ex rel. Beghian v. Beghian*, 408 Pa. 408, 411, 184 A.2d 270, 273 (1962); *Philadelphia Marine Trade Ass'n v. International Longshoremen's Ass'n*, 392 Pa. 500, 506, 140 A.2d 814, 818 (1958).

Discovery of the court's dominant purpose requires a functional analysis of the court's action. In this analysis the court's classification of the contempt plays an important but not determinative role. *Riccobene Appeal*, 439 Pa. 404, 268 A.2d 104 (1970) (plurality opinion). Basically, the reviewing court must decide whether the citing court's purpose was to "vindicate the dignity and authority of the court and to protect the interest of the general public." Such citation is for criminal contempt. *Knaus v. Knaus*, supra, at 376, 127 A.2d at 672. If the citation's purpose is to coerce the contemnor into compliance with the order of the court to do or refrain from doing some act primarily for the benefit of a litigant or a private interest the citation is for civil contempt. Id. at 377, 127 A.2d at 672. Where the contempt citation operates prospectively to coerce compliance with a court order, the citation will usually be for civil contempt. *East Caln Twp. v. Carter*, 440 Pa. 607, 269 A.2d 703 (1970); *Philadelphia Marine Trade Ass'n v. International Longshoremen's Ass'n*, 392 Pa. 500, 140 A.2d 814 (1958). In the present case, the deposition court's order confining appellant until he does the requested act evinces a clear purpose to benefit a litigant. Therefore, it must be considered civil contempt.

3. That section provides:
"The Supreme Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in any of the following classes of cases:

. . . . . . . . . .

(5) Direct criminal contempt in the courts of common pleas and other contempt proceedings in the courts of common pleas relating to orders which are appealable directly to the Supreme Court."

(1972). Because jurisdiction of an appeal from the decision of a trial court in a defamation action is in the Superior Court, Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. III, § 302, 17 P.S. § 211.302 (Supp.1974), this appeal should have been filed there. Nevertheless, no objection to our direct appellate jurisdiction has been filed and therefore, we may take jurisdiction. Id., art. V, § 503(a), 17 P.S. § 211.503(a) (Supp.1974).[4] In the interests of judicial economy, we will resolve the issues presented in this appeal.

Appellant contends that the court was without authority under the Pennsylvania Rules of Civil Procedure to order him to identify the papers contained in the corporation's files. He claims that Pa.R.Civ.P. No. 4009,[5] relating to the discovery of, inter alia, documents, papers, books and accounts, only applies to parties to litigation and that there is no provision in the rules for the discovery of a non-party's documents. He therefore asserts that the court had no authority to compel him to do anything to make the corporation's records available to the defendants.

**4.** That section provides:
"(a) The failure of an appellee to file an objection to the jurisdiction of an appellate court on or prior to the hearing of the appeal, or within such earlier time as may be specified by general rule or rule of court, shall, unless the appellate court shall otherwise order, operate to perfect the appellate jurisdiction of such appellate court, notwithstanding any provision of this act, or of any general rule adopted pursuant to section 505 of this act, vesting jurisdiction of such appeal in another appellate court."

**5.** Pa.R.Civ.P. 4009 provides:
"Subject to the limitations provided by Rule 4007(a) and Rule 4011, the court, on the motion of a party may
(1) order a party to produce and permit the inspection, including the copying and photographing, by or on behalf of the petitioner of designated tangible things, including documents, papers, books, accounts, letters, photographs and objects, which are in his possession, custody or control; or
(2) order any party to permit entry upon designated land or other property in his possession or control for the purpose of inspection, including measuring, surveying and photographing the property or any designated object or operation thereon."

42

■ Appellant's claim is based on a crabbed reading of our discovery rules. While it is true that Rule 4009 pertains only to parties, see 4 Goodrich-Amram, Pennsylvania Procedural Rules Service § 4009–1 (1954); compare Fed.R.Civ.P. 34; 8 C. Wright & A. Miller, Federal Practice and Procedure § 2209 (1970), that rule is not the sole source of the court's power to order the production of documents. Rule 4018 [6] provides that upon the request of a party, the court shall issue a subpoena to compel testimony at a deposition. The authority to issue a subpoena ordering a witness to appear for deposition includes the power to insert within the subpoena a duces tecum clause ordering the witness to produce papers, documents, or other evidence. 4 Goodrich-Amram, Pennsylvania Procedural Rules Service § 4018–5 (1954).

■ Furthermore, if the discovery of the documents is to serve its purpose of permitting the parties to obtain and preserve evidence and to clarify and narrow the issues,[7] the moving party must be allowed to inspect and copy the documents produced and examine the producing witness about them.[8] Interpreting the subpoena

6. Pa.R.Civ.P. 4018 provides:
 "Upon request of the person before whom the deposition is to be taken or a party, the court in which the action is pending or the court of common pleas of the county within this Commonwealth in which the deposition is to be taken shall issue a subpoena to testify."

7. See 4 Goodrich-Amram, supra, § 4001–1. Cf. *Hickman v. Taylor*, 329 U.S. 495, 501, 67 S.Ct. 385, 388–89, 91 L.Ed. 451 (1947).

8. This same issue was faced under the federal rules. Fed.R.Civ.P. 34, both prior to and after the 1970 amendments, provides only for the production of documents by parties. Nevertheless, the federal courts recognized that a non-party could be compelled to produce documents at a deposition pursuant to a subpoena duces tecum issued under Rule 45(d). However, prior to 1970, there was some confusion as to whether the subpoena issued at the request of the party entitled the party to inspect and copy the documents. Advisory Committee's Notes to the 1970 Amendments of Rule 45(d), 48 F.R.D. 487, 543 (1969). This confusion was resolved by the 1970 amendments which specifically provide that the party obtaining the subpoena is permitted to inspect and copy the documents. While the federal rules in the area of discovery

rule to merely require the witness to appear with the documents without requiring that he disclose them to the requesting party would be ludicrous. It follows that if the right to inspect and copy the documents and examine the producing witness is to be meaningful, the witness may be required to identify the documents he has produced. We conclude, therefore, that the court was acting within its authority when it directed appellant to identify the documents.[9]

Appellant argues that the documents tended to incriminate him, and he was therefore privileged to refuse to produce the documents and to refuse to give any testimony about them.[10] We conclude that appellant has no such privilege.[11]

Clearly, the custodian of corporate records may not on the basis of the Fifth Amendment privilege, refuse to produce records, even if they tend to incriminate him. *Wilson v. United States,* 221 U.S. 361, 31 S. Ct. 538, 55 L.Ed. 771 (1911); *Dreier v. United States,* 221 U.S. 394, 31 S.Ct. 550, 55 L.Ed. 784 (1911); *Commonwealth ex rel. Camelot Detective Agency v. Spector,* 451 Pa. 370, 379 n. 4, 303 A.2d 203, 208 n. 4 (1974). See *Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L. Ed.2d 678 (1974); *United States v. White,* 322 U.S. 694,

are not identical to our own, in this case we find their rationale persuasive in construing our own rules.

9. Of course, a party's right to require the production of a non-party's documents is not unlimited. The non-party may seek to quash the subpoena on appropriate grounds. He is also protected by Pa.R.Civ.P. 4011 & 4012.

10. Appellant maintains he is under investigation by the United States for mail fraud. He asserts that the records he is requested to produce are relevant to that investigation.

11. A party or a witness cannot be compelled to produce evidence at a deposition or in the course of discovery that could lead to his conviction. See Pa.R.Civ.P. 4011(c). Cf. *Maness v. United States,* 419 U.S. 449, 463, 95 S.Ct. 584, 594, 42 L.Ed.2d 576 (1975); *Kastigar v. United States,* 406 U.S. 441, 445, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972); *McCarthy v. Arndstein,* 266 U.S. 34, 45 S. Ct. 16, 69 L.Ed. 158 (1922).

64 S.Ct. 1248, 88 L.Ed. 1542 (1944); see also *United States v. Mahady & Mahady*, 512 F.2d 521 (3d Cir. 1975); *Commonwealth v. Columbia Investment Corp.*, 457 Pa. 353, 355–56, 325 A.2d 289, 290 n. 1 (1974). Appellant's contention that he could not be compelled to produce the documents is clearly incorrect.

 Furthermore, we find no merit in his contention that he could refuse to identify the documents he produced. In *United States v. Austin-Bagley Corp.*, 31 F.2d 229 (2d Cir.), cert. denied, 279 U.S. 863, 49 S.Ct. 479, 73 L.Ed. 1002 (1929), a corporate official refused to identify corporate books as a condition to their admission into evidence. Judge Learned Hand held that the officer had no privilege to so refuse.

> "That the production of the books and documents could be compelled, even if they contained entries incriminating the accused, is now well-settled law. *Wilson v. United States*, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771, Ann.Cas.1912D, 558; *Wheeler v. United States*, 226 U.S. 478, 33 S.Ct. 158, 57 L.Ed. 309; *Grant v. United States*, 227 U.S. 74, 33 S.Ct. 190, 57 L.Ed. 423. Though they be in their very possession, even their property, it makes no difference; it is the semipublic character of the documents themselves which removes their inviolability, the fact that they record corporate transactions. However, the availability of the documents does not necessarily determine that of the testimony by which they may be authenticated. Conceivably it might be possible to force their production, and yet their possessor be protected from proving by his oath that they were what they purport to be. In some cases, as, for example, when they are authenticated by the corporate seal, this might be unnecessary, but usually something of the sort must appear.

> "While, therefore, we do not disguise the fact that there is here a possible, if tenuous, distinction, we think that the greater includes the less, and that, since

the production can be forced, it may be made effective by compelling the producer to declare that the documents are genuine. In *Heike v. United States,* 227 U. S. 131, 33 S.Ct. 226, 57 L.Ed. 450, it is true that the testimony of the accused was given upon a hearing in a separate proceeding inquiring into a different crime, and the plea in effect claimed immunity for any other crime, in the proof of which the books produced might become a necessary link. Nevertheless, it would seem that the testimony was privileged, since it did directly incriminate the witness, though in another matter, and that the immunity was necessary to avoid it. Unless that case is to be disposed of on the theory that no such immunity was claimed, it necessarily held that the privilege did not exist. Hence it appears to us that the case determines that testimony auxiliary to the production is as unprivileged as are the documents themselves. By accepting the office of custodian the holder not only exposes himself to producing the documents, but to making their use possible without requiring other proof than his own."

Id. at 233–34.

Accord, *Pulford v. United States,* 155 F.2d 944, 957 (6th Cir. 1946); *Lumber Products Association v. United States,* 144 F.2d 546, 553 (9th Cir. 1944), rev'd on other grounds sub nom., *United Brotherhood of Carpenters v. United States,* 330 U.S. 395, 87 S.Ct. 775, 91 L.Ed. 973 (1947); *Carolene Products Co. v. United States,* 140 F. 2d 61, 66–67 (4th Cir.), aff'd on other grounds, 323 U.S. 18, 65 S.Ct. 1, 89 L.Ed. 15 (1944) ("[I]t is generally held in the federal courts that officers of a corporation may be required to produce and identify corporate records even though the records may tend to incriminate them."); *United States v. Illinois Alcohol Co.,* 45 F.2d 145 (2d Cir. 1930) ("A person producing corporate books and records before a grand jury and giving testimony as to such production is not entitled to immunity

under [the prohibition act]. Any testimony auxiliary to such production is unprivileged as are the documents themselves.").[12] But see *Communist Party of United States v. United States,* 118 U.S.App.D.C. 61, 331 F.2d 807 (1963) (Bazelon, J.).

In *Curcio v. United States,* 354 U.S. 118, 77 S.Ct. 1145, 1 L.Ed.2d 1225 (1957), the appellant refused on the basis of the Fifth Amendment privilege to answer questions concerning the whereabouts of the union books for which he had been served with a subpoena duces tecum. The court concluded that the witness could not be compelled to respond to these questions. The Court, however, distinguished the doctrine of the *Austin-Bagley Corp.* case:

"*United States v. Austin-Bagley Corp.,* 2 Cir., 31 F. 2d 229, and cases following it . . . holding that a corporate officer who has been required by subpoena to produce corporate documents may also be required, by oral testimony, to identify them, are distinguishable and we need not pass on their validity. The custodian's act of producing books or records in response to a subpoena *duces tecum* is itself a representation that the documents produced are those demanded by the subpoena. Requiring the custodian to identify or authenticate the documents for admission in evidence merely makes explicit what is implicit in the production itself. The custodian is subjected to little, if any, further danger of incrimination. However, in the instant case, the Government is seeking to compel the custodian to do more than identify documents already produced. It seeks to compel him to disclose, by his

12. See also *United States v. Globe Chemical Co.,* 311 F.Supp. 535, 547–48 (S.D.Ohio 1969); *In re Greenspan,* 187 F.Supp. 177, 179 (S.D.N.Y.1960); *United States v. Guterma,* 174 F.Supp. 581, 583 (E.D.N.Y.1959); *United States v. Maine Lobstermen's Ass'n,* 160 F.Supp. 115, 119 (D.Me.1957) (dictum); *United States v. Lawn,* 115 F.Supp. 674, 677 (S.D.N.Y.1953) (dictum); *United States v. Greater Kansas City Retail Coal Merchants,* 85 F.Supp. 503, 514 (W.D.Mo.1949); *In re Henry C. Eastburn & Son, Inc.,* 51 Del. 446, 147 A.2d 921, 925 (1959).

oral testimony, the whereabouts of books and records which he has failed to produce. It even seeks to make the custodian name the persons in whose possession the missing books may be found. Answers to such questions are more than 'auxiliary to the production' of unprivileged corporate or association records."

*Id.* at 125, 77 S.Ct. at 1150 (1957) (footnotes omitted). See McCormick's Handbook of the Law of Evidence § 129 (2d ed. E. Cleary 1972) ; 8 J. Wigmore, Law of Evidence § 2259(b) (McNaughton rev. 1961).

Here appellant Pivirotto was asked only to identify the documents he had brought into the courtroom. Although he may not be asked to do more if the privilege was purposely invoked, *Curcio v. United States,* supra; McCormick, supra; Wigmore, supra; he may be compelled to identify the documents. *United States v. Austin-Bagley Corp.,* 31 F.2d 229 (2d Cir.), cert. denied, 279 U.S. 863, 49 S.Ct. 479, 73 L.Ed. 1002 (1929).[13]

Order affirmed.

EAGEN, J., dissents.

MANDERINO, J., filed a dissenting opinion in which NIX, J., joins.

MANDERINO, Justice (dissenting).

I dissent. Although the majority correctly points out that "the custodian of corporate records may not on the basis of the Fifth Amendment privilege, refuse *to produce* records, even if they tend to incriminate him", (emphasis added) the majority opinion misinterprets the

13. In his brief, appellant twice cites the syllabi preceding cases in the Pennsylvania Reports and District and County Reports. Clearly the reporter's syllabi are not part of the opinions of this Court. They are simply the work of the reporter, give his understanding of ' the decision, and are prepared for the convenience of the profession in the examination of the reports. *United States v. Detroit Timber & Lumber Co.,* 200 U.S. 321, 337, 26 S.Ct. 282, 287, 50 L.Ed. 499 (1906).

meaning of the United States Supreme Court's application of the Fifth Amendment privilege in *Curcio v. United States,* 354 U.S. 118, 1 L.Ed.2d 1225, 77 S.Ct. 1145, 1 L.Ed.2d 1225 (1957).

In *Curcio,* the government had contended that because the custodian had no privilege upon which he could validly refuse *to produce* the books and records subpoenaed, he also had no privilege on which he could refuse *to answer* questions as to their whereabouts. The Court emphatically rejected that assertion saying:

"A custodian, by assuming the duties of his office, undertakes the obligation to produce the books of which he is custodian in response to a rightful exercise of the State's visitorial powers. *But he cannot lawfully be compelled,* in the absence of a grant of adequate immunity from prosecution, *to condemn himself by his own oral testimony."* (Emphasis added.)

*Id.* at 123–124, 77 S.Ct. at 1149, 1 L.Ed.2d at 1230.

Quoting from *Wilson v. United States,* 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911), "the leading case for the proposition that corporate officers may not invoke their personal privilege against self-incrimination to prevent the production of corporate records" (*Id.* at 124, 77 S.Ct. at 1149, 1 L.Ed.2d at 1230), the *Curcio* court said:

"They [the custodians of corporate records] may decline to utter upon the witness stand a single self-incriminating word. . . ."

*Id.* at 124, 77 S.Ct. at 1149, 1 L.Ed.2d at 1230.

Quoting from *Shapiro v. United States,* 335 U.S. 1, 27, 68 S.Ct. 1375, 92 L.Ed. 1787, 1804 (1948), a case "holding that the privilege against self-incrimination did not apply to records required to be kept by food licensees under wartime OPA regulations," the Court said:

" 'Of course all oral testimony by individuals can properly be compelled only by exchange of immunity for waiver of privilege.' There is no hint in these deci-

sions that a custodian of corporate or association books waives his constitutional privilege as to oral testimony by assuming the duties of his office. By accepting custodianship of records he 'has voluntarily assumed a duty which overrides his claim of privilege' *only* with respect to the production of the records themselves." (Emphasis in original.)

*Id.* at 124–125, 77 S.Ct. at 1150, 1 L.Ed.2d at 1230.

The majority seeks to avoid the implications of *Curcio* by reference to the *Curcio* court's apparent approval of *United States v. Austin-Bagley Corp.*, 31 F.2d 229 (2d Cir.), cert. denied, 279 U.S. 863, 49 S.Ct. 479, 73 L.Ed. 1002 (1929). Whatever the present vitality of *Austin-Bagley*, it is clearly inapplicable in the present case. *Austin-Bagley* itself recognized the possibility that a situation could exist where "it might be possible to force their [corporate books and record] production, and yet their possessor [would] be protected from proving by his oath that they were what they purport to be." *Id.* at 234.

*Austin-Bagley* allowed the custodian of the corporate books to be compelled to authenticate them as genuine; however, no claim was raised that such authentication, in and of itself, would incriminate the appellant. All that appellant was asked to do in *Austin-Bagley* was to identify the books produced as being those of the defendant corporation; "to declare that the documents [were] genuine." *Id.* at 233–234. Answering such a question could not have incriminated the appellants in any way. Distinguishing *Austin-Bagley*, the *Curcio* court noted:

"The custodian's act of producing books or records in response to a subpoena duces tecum is itself a representation that the documents produced are those demanded by the subpoena. Requiring the custodian to identify or authenticate the documents for admission in evidence merely makes explicit what is implicit in

the production itself. The custodian is subject to little, if any, further danger of incrimination."

354 U.S. at 125, 77 S.Ct. at 1150, 1 L.Ed.2d at 1231.

As recently as 1973 our Court recognized that there is a "distinction between compelling the custodian to testify and compelling the custodian to produce the records." *See Commonwealth ex rel. Camelot D. A. Inc. v. Spector,* 451 Pa. 370, 303 A.2d 203 (1973) (majority opinion by Roberts, J.). In doing so, we quoted from *Curcio* in which the court concluded:

"The compulsory production of corporate or association records by their custodian is readily justifiable, even though the custodian protests against it for personal reasons, because he does not own the records and has no legally cognizable interest in them. However, *forcing the custodian to testify orally* as to the whereabouts of nonproduced records *requires him to disclose the contents of his own mind. He might be compelled to convict himself out of his own mouth. That is contrary to the spirit and letter of the Fifth Amendment."* (Emphasis added.)

354 U.S. at 128, 77 S.Ct. at 1151–1152, 1 L.Ed.2d at 1232; 451 Pa. at 379–380, 303 A.2d at 208.

The language just quoted is as applicable here as it was in *Curcio.* Forcing Pivirotto to identify each individual document contained in the corporate records produced pursuant to the subpoena might likewise force him to provide evidence "out of his own mouth" which could be used against him in a criminal proceeding. Although not readily apparent from the majority's opinion, mere identification by appellant of certain documents within the corporate files could have provided proof of knowledge of their existence and content sufficient to aid in his conviction of mail fraud charges for which he was being investigated.

As was enumerated in *Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974), the unavailability of the Fifth Amendment privilege against self-incrimination to one who holds the records of an organization and who seeks to avoid a subpoena for their production presupposes, among other things, that "the records subpoenaed must in fact be organizational records held in representative capacity . . . that the records demanded are the records of the organization rather than those of the individual . . . ." *Id.* at 93, 94 S.Ct. at 2185, 40 L.Ed.2d at 686. Inherent in such a statement is the recognition of the possibility that the custodian of the corporate records might not know of their contents. It is possible that the government's mail fraud case against appellant Pivirotto could depend upon his knowledge of the specific contents of the corporated records, and that an admission of such knowledge—made by identifying specific documents—could be incriminating.

This case thus presents a situation unlike that which existed in *Austin-Bagley.* There the court found that production of the corporate records was the implicit equivalent of a representation that they were authentic. It cannot be said in this case, however, that mere possession of the corporate records was the equivalent of knowledge of their contents. The *Austin-Bagley* doctrine has no application outside the situation where the authentication demanded can in no way incriminate the custodian of the corporate records. *See Communist Party of U. S. v. United States,* 118 U.S.App.D.C. 61, 331 F.2d 807 (1963).

In *Commonwealth v. Hawthorne,* 428 Pa. 260, 236 A. 2d 519 (1968), we recognized that for purposes of invocation of the Fifth Amendment privilege against self-incrimination, "[*i* ]*t is sufficient if the person questioned has reasonable cause to apprehend such danger* [of prosecution]. (Emphasis in original.) *Id.* at 263, 236 A.2d at 520. Furthermore, in *Hawthorne,* we held that *"the*

*privilege extends* not only to the disclosure of facts which would in themselves establish guilt, but *also to any fact which might constitute an essential link in a chain of evidence by which guilt can be established.*" (Emphasis in original.) *Id.* at 263, 236 A.2d at 520–521, and that a denial of the exercise of the privilege was proper only if the answers demanded *"could not possibly have a tendency to incriminate . . . ."* (Emphasis in original.) *Id.* at 264, 236 A.2d at 521.

I do not now reach the question of whether the alleged contempt is civil or criminal except to observe that when one is jailed, the issue is not simply one of nomenclature or of affronts to "the dignity and authority of the court." Constitutional protections must not be sidetracked by legal labels.

For these reasons, I would reverse the contempt order of the Court of Common Pleas.

NIX, J., joins in this dissenting opinion.