372 A.2d 884

**In re B.**

**Appeal of Dr. Loren ROTH.**

Superior Court of Pennsylvania.

Argued Nov. 9, 1976.

Decided April 19, 1977.

Joel I. Klein, Washington, D. C., with him Alan Meisel, Pittsburgh, for appellant.

Douglas T. Greene, Assistant County Solicitor, Pittsburgh, with him Alexander J. Jaffurs, Solicitor, Pittsburgh, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT, and SPAETH, JJ.

JACOBS, Judge:

This appeal arises from an adjudication of contempt in the court below. For the reasons that follow, we have determined that appellant was held in direct criminal contempt, and therefore order transfer of this appeal to the Supreme Court.

A petition was filed in the Family Division of the Court of Common Pleas of Allegheny County, Pennsylvania, for a hearing on deprived and delinquent charges regarding "B". "B", a fifteen year old boy with a long history of social and emotional problems, was brought before the court after running away from George Junior Republic and, with three companions, stealing four automobiles and one citizen's band radio.

A court psychiatrist appointed to examine and evaluate "B" determined that several of "B's" problems are related to a semi-absent father figure and an alcoholic mother, and recommended that the court obtain hospital records regarding "B's" mother and her psychiatric treatment, presumably to aid in the diagnosis and placement of "B". "B's" mother refused to sign a consent form for release of her records, and the Western Psychiatric Institute and Clinic (WPIC) refused to release the records without the patient's consent. Thereupon the court, TAMILIA, J., issued a subpoena to the Administrator of WPIC, ordering him to attend a hearing on April 26, 1976, and to bring with him all records pertaining to Mrs. "B".

Dr. Loren Roth appeared at the hearing on behalf of WPIC, and was represented by counsel. Through counsel, Dr. Roth asserted that Mrs. "B's" psychiatric records are privileged from judicial disclosure under the physician-pa-

tient privilege statute,[1] and Principle 9 of the Principles of Medical Ethics. The court below nevertheless determined the privilege not to apply in this case, and ordered Dr. Roth to turn over the records. When he refused, the court held him in contempt, and fined him $100, but stayed execution on the contempt proceedings for five days pending appeal.

On April 29, 1976, an appeal was filed with this Court at No. 747 April Term, 1976, and on May 4, 1976, the court below stayed its contempt order pending the outcome of this appeal.

The Supreme Court has exclusive jurisdiction over appeals from final orders of the common pleas courts in matters of direct criminal contempt.[2] In a civil contempt adjudication, however, this court has jurisdiction provided appeals of other matters involved in the case would properly lie with us. *Woods v. Dunlop*, 461 Pa. 35, 334 A.2d 619 (1975). Since we normally hear appeals from juvenile proceedings, a finding of civil contempt arising from a juvenile proceeding would be properly appealed to this Court. Although the court below, TAMILIA, J., characterized the action as direct civil contempt, this classification is not determinative. *Woods v. Dunlop, supra*, 461 Pa. at p. 40, n.2, 334 A.2d 619; *Riccobene Appeal*, 439 Pa. 404, 268 A.2d 104 (1970) (plurality opinion). Our guide, as the reviewing court, is the dominant purpose of the court below in issuing the contempt citation.

"If the dominant purpose is to prospectively coerce the contemnor to comply with an order of the court, the adjudication of contempt is civil. If, however, the dominant purpose is to punish the contemnor for disobedience of the court's order or some other contemptuous act, the adjudication of contempt is criminal.

Dominant purpose of coercion or punishment is expressed in the sanction imposed. A civil adjudication of contempt coerces with a conditional or indeterminate sentence of which the contemnor may relieve himself by

1. Act of June 7, 1907, P.L. 462, No. 311, § 1, 28 P.S. § 328 (1958).

2. Act of July 31, 1970, P.L. 673, No. 223, Art. II, § 202(5), 17 P.S. § 211.202(5) (1976–77).

obeying the court's order, while a criminal adjudication of contempt punishes with a certain term of imprisonment or a fine which the contemnor is powerless to escape by compliance." *In re Martorano*, 464 Pa. 66, 77–79, 346 A.2d 22, 27–28 (1975) (footnotes omitted) (citations omitted).

In this case, no standards were attached to the sanction by which appellant could purge himself of his contempt, and appellant was in court when he refused to disclose Mrs. "B's" records. This constituted direct criminal contempt. *Knaus v. Knaus*, 387 Pa. 370, 127 A.2d 669 (1956).

Finally, appellant was immediately assessed a $100.00 fine for his refusal to comply with the court's order to turn over the records. The following excerpt from the court's proceedings clearly indicates that appellant was powerless to escape this fine by compliance:

"THE COURT: I'm telling you now that we are giving you an Order to give me the records and tell us what's in the files.

"DR. ROTH: I understand that.

"THE COURT: So, you are protected from the point of view you're not giving anything.

"DR. ROTH: Yes.

"THE COURT: Except under duress.

"DR. ROTH: I understand that, but I'm going to refuse to give the records.

"THE COURT: Then I'm going to hold you in contempt, and we'll fine you $100.00 right now for refusal to give us these records. It's up to you if you want to proceed toward an appeal and supersedeas." Printed Record at 14a–15a.

For the foregoing reasons, we therefore order this appeal transferred to the Supreme Court pursuant to Pa.R.A.P. 751(a).

SPAETH, J., files a dissenting opinion.

SPAETH, Judge, dissenting:

I would not certify the case to the Supreme Court but would remand for clarification.

I agree with the majority that it is possible to regard the lower court's order as adjudicating appellant in direct criminal contempt, in which case the Supreme Court has exclusive jurisdiction of any appeal from the order. It is, however, at least equally possible to regard the order as adjudicating appellant in civil contempt.

As the majority observes, whether a contempt is criminal or civil depends upon the court's dominant purpose. If the dominant purpose is to punish, the contempt is criminal; if to compel compliance, it is civil. *Barrett v. Barrett*, 470 Pa. 253, 368 A.2d 616 (filed January 28, 1977). In assessing purpose, "[i]t is well-settled that where the dominant purpose of the contempt proceeding is to aid a private litigant or interest rather than to vindicate the authority of the court or to protect the public interest, the contempt is civil." *Id.* at 260, 368 A.2d at 619.

> Here, in explaining its purpose, the lower court said:
> It's information necessary for me to make a decision more than even having these people deal with him or treat him.
> (Record at 12a)

And:

> Well, I'm going to test this. I'm going to order you to give me that information. I think it's absolutely necessary when we're dealing with a child who's got a problem. We've got to know as much about how our treatment program should be. Otherwise we're just wasting time . . . ..
> (Record at 13a)

This is ambiguous. On the one hand, the court, in adjudicating appellant in contempt, may have been thinking of its own dignity: it felt affronted by the refusal to furnish it information it had requested and believed it needed. On the

other hand, and perhaps more likely, the court may have been thinking more of a private interest, specifically, of what would be best for the child who would be affected by its order.

As the record stands there is no way to resolve this ambiguity. When the lower court was asked whether the contempt was civil or criminal, it said:

ATTY. MEISEL: Your Honor, there is one thing that occurs to me. Would it be more appropriate in this kind of a situation to find us in civil contempt, being that it's the records that you are seeking?

THE COURT: Well, there is such a close line between civil contempt and criminal contempt that it gets to the point where you have a subpoena issued and you're here in court, and you refuse to obey an Order of Court. I'm not even going to state it. Let the Superior Court decide which one it is. They always do. Every time we go one way they go the other way.

ATTY. MEISEL: However, in terms of Dr. Roth's professional reputation and record, I'm sure under civil contempt would be preferable.

THE COURT: I'm not going to state anything about criminal contempt here.

(Record at 16a)

It may be that in making this statement the lower court believed that whether the contempt was criminal or civil was immaterial, overlooking the fact that which it was would control appellate jurisdiction. In my opinion, before either the Supreme Court or this court is asked to proceed further the lower court should be obliged to clarify the record by stating what its dominant purpose was when it adjudicated appellant in contempt.